ACCEPTED
01-15-00640-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
10/7/2015 12:18:33 AM
CHRISTOPHER PRINE
CLERK

## Cause No. 01-15-00640-CV

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS
AT HOUSTON

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
10/7/2015 12:18:33 AM
CHRISTOPHER A. PRINE
~~Clerk~~

GREYSTONE MULTI-FAMILY BUILDERS, INC.,

*Appellant,*

V.

TES ELECTRIC LP,

*Appellee.*

## BRIEF OF APPELLANT GREYSTONE MULTI-FAMILY BUILDERS, INC.

RICHARD B. PHILLIPS, JR.
State Bar No. 24032833
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street
Suite 1500
Dallas, Texas 75201
Phone: 214-969-1700
Fax: 214-969-1751
rich.phillips@tklaw.com

J. MICHAEL BELL
State Bar No. 02079200
MEGAN H. SCHMID
State Bar No. 24074383
THOMPSON & KNIGHT LLP
333 Clay Street
Suite 3300
Houston, Texas 77002
Phone: 713-654-8111
Fax: 713-654-1871
michael.bell@tklaw.com
megan.schmid@tklaw.com

COUNSEL FOR APPELLANT
GREYSTONE MULTI-FAMILY BUILDERS, INC.

ORAL ARGUMENT
REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**DEFENDANT/APPELLANT**

Greystone Multi-Family
Builders, Inc.

**TRIAL COUNSEL**

J. Michael Bell
Megan H. Schmid
THOMPSON & KNIGHT LLP
333 Clay Street
Suite 3300
Houston, Texas 77002
Phone: 713-654-8111
Fax: 713-654-1871
michael.bell@tklaw.com
megan.schmid@tklaw.com

**APPELLATE COUNSEL**

Richard B. Phillips, Jr.
THOMPSON & KNIGHT LLP
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201
214-969-1700
214-969-1751
rich.phillips@tklaw.com

J. Michael Bell
Megan H. Schmid
THOMPSON & KNIGHT LLP
333 Clay Street
Suite 3300
Houston, Texas 77002
Phone: 713-654-8111
Fax: 713-654-1871
michael.bell@tklaw.com
megan.schmid@tklaw.com

| **PLAINTIFF/APPELLEE** | **TRIAL AND APPELLATE COUNSEL** |
| --- | --- |
| TES Electric LP | Ashish Mahendru |
| | Darren A. Braun |
| | MAHENDRU, P.C. |
| | 639 Heights Boulevard |
| | Houston, Texas 77007 |
| | Phone: 713-571-1519 |
| | Fax: 716-651-0776 |
| | amahendru@thelitigationgroup.com |
| | dbraun@thelitigationgroup.com |

# TABLE OF CONTENTS

Page

Identity of Parties and Counsel . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . .  vi

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . .  ix

Statement Regarding Oral Argument . . . . . . . . . . . . . . . . . . . . .  x

Statement Regarding Record References . . . . . . . . . . . . . . . . . . .  x

Issue Presented . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  xi

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . .  3

Argument and Authorities. . . . . . . . . . . . . . . . . . . . . . . . . .  4

    1.   The subcontract contains a binding
          arbitration agreement. . . . . . . . . . . . . . . . . . . . .  4

        A.  The only reasonable construction of the
            subcontract is that it gives Greystone the
            right to decide whether a dispute will be
            arbitrated.. . . . . . . . . . . . . . . . . . . . . . . . . . .  6

(1) Only Greystone's construction gives effect
to all of the provisions in Section 10.1. . . . . . . . . . . 7

(2) An arbitration provision that gives one party
the sole power to decide whether a claim should
be arbitrated is enforceable. . . . . . . . . . . . . . . . . 11

B. TES's other arguments about section 10.1
are unavailing.. . . . . . . . . . . . . . . . . . . . . . . . . 14

(1) TES cannot show that the agreement is
unconscionable. . . . . . . . . . . . . . . . . . . . . . . 15

(2) TES's new ambiguity argument also fails. . . . . . . 20

2. TES's claims are within the broad scope of
the arbitration agreement. . . . . . . . . . . . . . . . . . . . 22

A. The arbitration provision broadly applies
to all disputes, claims, or questions. . . . . . . . . . . . . 23

B. The arbitration provision applies to tort
claims that arose after the subcontract was
terminated. . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Conclusion and Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Certificate of Compliance . . . . . . . . . . . . . . . . . . . . . . . 32

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Appendices

A   —   Order Denying Greystone Multi-Family
Builders, Inc.'s Motion to Compel Arbitration
and Motion to Stay (CR 155) . . . . . . . . . . . . . . . . Tab A

B   —   Excerpts from Subcontract Agreement
(CR 31-32, 42-43) . . . . . . . . . . . . . . . . . . . . . . Tab B

# INDEX OF AUTHORITIES

Page

## CASES

*950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship,*
316 S.W.3d 191 (Tex. App.—Houston [14th Dist.]
2010, no pet.) . . . . . . . . . . . . . . . . . . . . . . . .  26

*Anglo-Dutch Petroleum Int'l v. Greenberg Peden P.C.,*
352 S.W.3d 445 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . .  21

*Aspen Tech., Inc. v. Shasha,*
253 S.W.3d 857 (Tex. App.—Houston [14th Dist.]
2003, no pet.) . . . . . . . . . . . . . . . . . . . . . . . .  5

*AutoNation USA Corp. v. Leroy,*
105 S.W.3d 190 (Tex. App.—Houston [14th Dist.]
2003, no pet.) . . . . . . . . . . . . . . . . . . . . .  5-6, 22

*Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.,*
348 S.W.3d 894 (Tex. 2011) . . . . . . . . . . . . . . . . . . . .  8

*Beckham v. William Bayley Co.,*
655 F. Supp. 288 (N.D. Tex. 1987) . . . . . . . . . . . . . . . . .  24

*Belmont Constructors, Inc. v. Lyondell Petrochemical Co.,*
896 S.W.2d 352 (Tex. App.—Houston [1st Dist.]
1995, no pet.) . . . . . . . . . . . . . . . . . . . . . . .  24

*Cleveland Constr. Inc. v. Levco Constr. Inc.,*
359 S.W.3d 843 (Tex. App.—Houston [1st Dist.]
2012, pet. dism'd by agr.) . . . . . . . . . . . . . . . .  6, 11, 12, 13, 29

*El Paso Field Servs., L.P. v. MasTec N. Am., Inc.,*
389 S.W.3d 802 (Tex. 2012) . . . . . . . . . . . . . . . . . . . .  21

*Exxon Corp. v. Emerald Oil & Gas Co., L.C.,*
348 S.W.3d 194 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . 21

*FD Frontier Drilling (Cyprus), Ltd. v. Didmon*,
438 S.W.3d 688 (Tex. App.—Houston [1st Dist.]
2014, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26, 28

*Guggenheim Corp. Funding LLC v. Valerus Compression Servs., LP,*
465 S.W.3d 673 (Tex. App.—Houston [1st Dist.]
2015, pet. filed). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Hemyari v. Stevens,*
355 S.W.3d 623 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . 16

*Henry v. Gonzalez,*
18 S.W.3d 684 (Tex. App.—San Antonio 2000,
pet. dism'd). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*In re FirstMerit Bank,*
52 S.W.3d 749 (Tex. 2001) . . . . . . . . . . . . . . . . . . 14, 15

*In re Halliburton,*
80 S.W.3d 566 (Tex. 2002) . . . . . . . . . . . . . . . . . . . . . 15

*In re Hornbeck Offshore Corp.,*
981 F.2d 752 (5th Cir. 1993) . . . . . . . . . . . . . . . . . . . . 24

*In re Kellogg Brown & Root,*
80 S.W.3d 611 (Tex. App.—Houston [1st Dist.]
2002, orig. proceeding). . . . . . . . . . . . . . . . . . . . . . . . 5

*In re Merrill Lynch Trust Co. FSB,*
235 S.W.3d 185, 202 (Tex. 2007) . . . . . . . . . . . . . . . . . 26

*In re PolyAmerica, L.P.,*
  262 S.W.3d 337 (Tex. 2008) . . . . . . . . . . . . . . . . . . . . . . . 18

*In re Rubiola,*
  334 S.W.3d 220 (Tex. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 5

*J.M. Davidson, Inc. v. Webster,*
  128 S.W.3d 223 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . 7

*Kline v. O'Quinn,*
  874 S.W.2d 776 (Tex. App.—Houston [14th Dist.]
  1994, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Leyendecker Constr. Inc. v. Berlanga,*
  No. 04–13–00095–CV, 2013 WL 4009752
  (Tex. App.—San Antonio Aug. 7, 2013, no pet.) . . . . . . . 11, 12, 13

*Roehrs v. FSI Holdings, Inc.,*
  246 S.W.3d 796 (Tex. App.—Dallas 2008,
  pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*RSUI Indem. Co. v. The Lynd Co.,*
  466 S.W.3d 113 (Tex. 2015) . . . . . . . . . . . . . . . . . . . . . . . 25

*Serv. Corp. Int'l v. Lopez,*
  162 S.W.3d 801 (Tex. App.—Corpus Christi 2005,
  no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*The Rice Co. (Suisse), S.A. v. Precious Flowers, Ltd.,*
  523 F.3d 528 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . 24, 25, 27

*Travelers Indemnity Co. v. Texas Municipal League Joint Self-*
  *Insurance Fund,*
  No. 01-08-00062-CV, 2008 WL 2756874
  (Tex. App.—Houston [1st Dist.] July 17, 2008, no pet.). . . . . . . 13

# STATEMENT OF THE CASE

*Nature of the Case:*

This is a dispute between a subcontractor and a general contractor on a multi-family construction project in Houston. Plaintiff/Appellee TES Electric LP was an electrical subcontractor on the project. (CR 31.) TES sued Defendant/Appellant Greystone Multi-Family Builders, Inc. (the general contractor) asserting breach-of-contract and various tort claims allegedly arising from TES's work under the subcontract. (CR 3-14.)

*Course of Proceedings:*

Greystone moved to compel arbitration based on an arbitration provision in the parties' contract. (CR 17-85.) TES opposed the motion. (CR 108-24.)

*Trial Court's Disposition:*

Following a non-evidentiary hearing, the trial court (125th Judicial District Court, Hon. Kyle Carter, presiding) denied the motion to compel arbitration. (CR 155 (App. Tab A).) Greystone filed a timely notice of interlocutory appeal. (CR 158-59.) Greystone timely requested that the trial court file findings of fact and conclusions of law (CR 156-57), but no findings or conclusions were filed.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant Greystone Multi-Family Builders, Inc. respectfully requests that the Court hear oral argument in this appeal because the Court will benefit from the opportunity to question the parties' about their competing views of the arbitration provision.

## STATEMENT REGARDING RECORD REFERENCES

The appellate record in this case includes a two-volume reporter's record, which will be cited as "[volume] RR [page]," and a one volume "Corrected Original Clerk's Record" (filed on August 18, 2015), which will be cited as "CR [page]."

# ISSUE PRESENTED

Did the trial court err by refusing to compel arbitration of TES Electric LP's claims?

## INTRODUCTION

Greystone Multi-Family Builders, Inc. contracted for the right to decide whether any disputes arising between Greystone and TES Electric LP would be submitted to arbitration. The arbitration provision in the parties' subcontract gives Greystone the right to request arbitration of any dispute that arises. Moreover, if TES desires to arbitrate, the provision gives Greystone the option to consent to arbitration or require litigation. The trial court erred in refusing to enforce the parties' arbitration agreement. Therefore, this Court should reverse the trial court's order and direct the trial court to compel arbitration and stay litigation proceedings until the arbitration is completed.

## STATEMENT OF FACTS

Greystone is the general contractor for a multi-family housing project in Houston. (CR 29.) Greystone entered into a subcontract agreement with TES under which TES was to provide electrical services and related materials for the project. (*Id.*) After TES began work on the project, there were multiple disputes about whether TES

was properly performing under the subcontract. (CR 19.) Eventually, Greystone terminated the subcontract and hired a new subcontractor. (*Id.*) TES has alleged that the owner of the new subcontractor is a former TES employee. (CR 7.)

TES sued Greystone,[1] asserting various breach-of-contract and tort claims, all arising from the parties' relationship under the subcontract, including Greystone's decision to terminate TES and hire a new subcontractor. (CR 7-12.) TES has asserted claims for breach of the subcontract. (CR 7-8.) TES has also asserted claims for fraud and violation of the Texas Civil Theft Liability Act based on Greystone's alleged promise to pay for certain change orders. (CR 8, 10.) TES has also sued its former employees for tortious interference, breach of fiduciary duty, unfair competition, and theft of trade secrets. (CR 9-11.) TES claims that Greystone conspired with the former employees in these actions. (CR 11.) Finally, TES seeks to foreclose on alleged materialman's liens. (CR 12.) Greystone disputes all of TES's claims. (CR 15.)

---

[1] Greystone disputes TES's allegations, but the merits of TES's claims are beyond the scope of this appeal.

Greystone invoked the arbitration provision in the subcontract and moved to compel arbitration of all of TES's claims. (CR 17-28.) TES opposed the motion (CR 108-23), and the trial court denied it. (CR 155 (App. Tab A).) Greystone filed a request for findings of fact and conclusions of law, but the trial court did not file any findings or conclusions. (CR 156-57.) Greystone filed a timely notice of interlocutory appeal to seek review of the trial court's refusal to compel arbitration. (CR 158-59.) Greystone then filed a motion to stay the trial proceedings pending this appeal, which the trial court also denied. (CR 155).

## SUMMARY OF THE ARGUMENT

The trial court erred in refusing to compel arbitration (and to stay the trial proceedings) because the parties' agreement contains a binding arbitration clause. The clause gives Greystone the right to either request arbitration if TES initiates litigation or consent to a request for arbitration made by TES. This construction of the arbitration provision is the only one that gives meaning to all of the provisions of the agreement. TES's attempt to limit the provision to

cases in which TES first requests arbitration ignores an entire sentence of the agreement.

TES's arguments against the enforceability of the agreement are also misplaced. TES has not (and cannot) show that the agreement is unconscionable by pointing to an obvious typographical error in the agreement. The Court should also reject TES's new argument that the agreement is ambiguous because it was not raised below and because it is legally unsupportable.

Moreover, the arbitration provision is broad enough to encompass all of TES's claims. The provision requires arbitration of "all disputes, claims or questions," which makes it broad enough to encompass any dispute, not just contractual disputes. Because all of TES's claims are related to the subcontract, they must be submitted to arbitration.

## ARGUMENT AND AUTHORITIES

### 1. The subcontract contains a binding arbitration agreement.

There is no dispute that the Federal Arbitration Act controls whether arbitration should be compelled here. The arbitration

provision specifically provides that it "shall be governed by the Federal Arbitration Act." (CR 42 (App. Tab B).) The Texas Supreme Court has held that the FAA applies when the parties expressly agree to arbitrate under the FAA. *See In re Rubiola*, 334 S.W.3d 220, 223 (Tex. 2011) ("Parties may also expressly agree to arbitrate under the FAA.") When the parties specifically agree to be subject to the FAA, it applies without regard to whether the transaction involves or affects interstate commerce. *See In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) ("[W]hen, as here, the parties agree to arbitrate under the FAA, they are not required to establish that the transaction at issue involves or affects interstate commerce."). Moreover, in the trial court, TES agreed that the FAA applies. (CR 110-11.)

When the FAA applies, a motion to compel arbitration must be granted if (1) the agreement is valid and (2) the claims at issue are within the scope of the arbitration agreement. *See, e.g., Aspen Tech., Inc. v. Shasha*, 253 S.W.3d 857, 865-66 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190,

195 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Once the party seeking arbitration establishes that an agreement exists under the FAA and that the claims raised are within the agreement's scope, the trial court has no discretion but to compel arbitration.").

In reviewing a trial court's decision on a motion to compel arbitration under the FAA, this Court defers to the trial court's factual determinations and reviews the trial court's legal determinations de novo. *See Cleveland Constr. Inc. v. Levco Constr. Inc.*, 359 S.W.3d 843, 851-52 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd by agr.). Because there are no fact disputes in this appeal, the standard of review is de novo.

### A. The only reasonable construction of the subcontract is that it gives Greystone the right to decide whether a dispute will be arbitrated.

Section 10.1 of the subcontract provides:

> With the consent of the General Contractor, all disputes, claims or questions not resolved informally are subject to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. If General Contractor requests that any particular dispute, claim or question should be arbitrated, then arbitration shall be effected as provided hereinafter, and the decision of such arbitration shall be benign [sic] on all

parties. If, however, General Contractor elects not to consent to arbitration, then either or both parties may resort to an appropriate judicial action … .

(CR 42 (App. Tab B).) The parties' dispute here centers on the fact that the first and third sentences of Section 10.1 provide that Greystone can "consent" to arbitration and the second sentence provides that Greystone can "request" arbitration. Greystone argues that the second sentence controls here because Greystone requested that TES's claims be arbitrated. (CR 23.) TES relies on the first and third sentences to argue that this is a permissive arbitration clause and that arbitration can be compelled only if TES first requests it and Greystone then consents. (CR 113-14.)

### (1) Only Greystone's construction gives effect to all of the provisions in Section 10.1.

The issue is which party's construction properly gives meaning to all of the terms of the agreement. *See, e.g.*, *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 229 (Tex. 2003) (holding that in construing an arbitration agreement a court "must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered

meaningless"); *see also Guggenheim Corp. Funding LLC v. Valerus Compression Servs., LP*, 465 S.W.3d 673, 681 (Tex. App.—Houston [1st Dist.] 2015, pet. filed). Because the construction of an unambiguous contract[2] is a question of law, the Court should determine the meaning of Section 10.1 de novo. *E.g., Basic Capital Mgmt., Inc. v. Dynex Commercial, Inc.*, 348 S.W.3d 894, 900 (Tex. 2011) ("[W]hen a contract is not ambiguous, the construction of the written instrument is a question of law for the court." (internal citation omitted)).

By filing the motion to compel arbitration, Greystone exercised its right as General Contractor to request that TES's claims be arbitrated. (CR 42 ("If General Contractor requests that any particular dispute, claim or question should be arbitrated, then arbitration *shall be effected* as provided hereinafter." (emphasis added)) (App. Tab B).) Under the terms of the arbitration agreement, that request triggered a binding obligation to arbitrate the claims. (*Id.*). To give effect to the second sentence, Section 10.1 must be construed to give Greystone

---

2 As discussed in Section 1.(B).(2), below, despite statements that TES has made in filings in this Court, neither party argued below that the subcontract is ambiguous.

the right to compel arbitration of *any* claim filed by TES that falls within the scope of the arbitration agreement.[3]

To avoid this result, TES argued in the trial court that the arbitration provision should be construed to require arbitration only if Greystone consents to a request first made by TES. (CR 116.) In other words, TES argues that because the first and third sentences of Section 10.1 speak to Greystone's "consent" to arbitration, "TES must first request arbitration" before Greystone can consent and then proceed to arbitration. (*Id.*)[4]

Contrary to TES's argument, the only reasonable construction of Section 10.1 that gives effect to *all* of its provisions is the construction urged by Greystone. TES's construction disregards Greystone's right

---

[3]    As discussed in Section 2, below, the arbitration provision is a broad agreement that covers all claims related to the subcontract. Thus, all of TES's claims fall within the scope of the arbitration provision.

[4]    TES also argued that the heading for Section 10.1 ("Arbitration by General Contractor Consent") supports TES's construction. (CR 114.) But the subcontract specifically provides that "[t]he captions appearing throughout this Subcontract … are descriptive only and for convenience, and in no way whatsoever define, limit or describe the scope or intent of this Subcontract, or in any way effect the Subcontract." (CR 32 (App. Tab B).) Therefore, the heading for Section 10.1 cannot change the construction of the arbitration provision.

in the second sentence to request arbitration of "any" dispute, claim, or question. Section 10.1 is written to account for the various ways in which formal dispute resolution might be initiated. If TES attempts to initiate arbitration, then the first and third sentences of Section 10.1 give Greystone the right to decide whether to consent to arbitration or to withhold consent and require litigation instead. And if TES initiates litigation, then the second sentence of Section 10.1 gives Greystone the right to require that the claim be arbitrated. In either scenario, Greystone has the right to decide whether the particular claim, dispute, or question will be decided in arbitration or in litigation. This construction gives meaning to all three sentences in Section 10.1.

In the trial court, TES attempted to bolster its construction of Section 10.1 by pointing out that if a payment dispute is arbitrated, TES has the right to suspend performance during the arbitration. (CR 116.) TES reasoned that "Greystone would not want to give TES the unilateral right to arbitrate a payment dispute and thereby suspend its performance in middle of its contractual performance." (*Id.*)

Greystone agrees with TES that Greystone would want to have the last word about whether a dispute will be arbitrated so that TES cannot create a right to suspend performance just by initiating an arbitration proceeding. But this does not make TES's interpretation reasonable. Greystone's construction accounts for this feature of the subcontract, because in Greystone's construction, the decision to arbitrate rests solely with Greystone, regardless of how the dispute is initiated.

### (2) *An arbitration provision that gives one party the sole power to decide whether a claim should be arbitrated is enforceable.*

Texas courts have enforced arbitration agreements that give one of the parties the sole power to decide whether a claim will be arbitrated or litigated. *See Cleveland Constr. Inc. v. Levco Constr. Inc.*, 359 S.W.3d 843, 853-54 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd by agr.); *Leyendecker Constr. Inc. v. Berlanga*, No. 04–13–00095–CV, 2013 WL 4009752 at *2 (Tex. App.—San Antonio Aug. 7, 2013, no pet.). In *Cleveland Construction*, the arbitration provision gave one party (the general contractor) the sole option to decide that a claim

should be arbitrated. *Cleveland Constr.*, 359 S.W.3d at 846. This Court found that the arbitration agreement was enforceable because the consideration for the agreement to arbitrate at the demand of the general contractor was found in the other promises in the subcontract. *Id.* at 853-54.

The arbitration provision in *Leyendecker Construction* similarly gave one party the sole option to decide that a claim should be arbitrated. *Leyendecker Constr.*, 2013 WL 4009752 at *2. And the court in that case also found that the agreement was enforceable. *Id.*

The language in the arbitration provisions in *Cleveland Construction* and *Leyendecker Construction* is not the same as the language here, but the effect is the same. Just as in those cases, the language here gives Greystone the sole option to decide whether a claim should be arbitrated. Greystone can either consent to a request by TES to arbitrate or request arbitration if TES initiates litigation.

Just as in *Cleveland Construction* and *Leyendecker Construction*, the provision here should be enforced.[5]

To argue that the agreement is permissive rather than binding, TES relied in the trial court on *Travelers Indemnity Co. v. Texas Municipal League Joint Self-Insurance Fund*, No. 01-08-00062-CV, 2008 WL 2756874 at *3 (Tex. App.—Houston [1st Dist.] July 17, 2008, no pet.). (CR 115.) But the arbitration provision in that case was materially different from the provision here. In *Travelers*, the provision specifically gave *both* parties the right to accept or reject a request for arbitration sent by the other party. *Id.* at *1. Here, in contrast, only Greystone is given the right to reject a request for arbitration. Therefore, the arbitration provision here is not permissive.

In sum, to give effect to all of the sentences in Section 10.1, it must be construed to give Greystone the right to request arbitration

---

[5]    At the hearing on Greystone's motion to compel, TES's counsel agreed that an arbitration provision that gives one party the sole right to decide whether a dispute will be arbitrated is valid. (2 RR 12.) TES instead argued against Greystone's construction of the provision here. (*Id.*) For the reasons set out in Section 1.(A).(1), TES's argument should be rejected.

when TES initiates litigation. This construction does not negate the other sentences, which are operative only when TES initiates arbitration rather than litigation, and Greystone has the right to consent. TES's proposed construction, on the other hand, ignores Greystone's right to request arbitration that is provided in the second sentence of Section 10.1. To the extent the trial court concluded that Section 10.1 is not a binding arbitration agreement or that Greystone does not have the right to compel arbitration when TES initiates litigation, the trial court erred.

## B. TES's other arguments about section 10.1 are unavailing.

TES also argued below that Greystone's construction of Section 10.1 would make the arbitration provision unconscionable. (CR 117.) But TES did not (and cannot) carry its burden on this argument. *See In re FirstMerit Bank*, 52 S.W.3d 749, 756 (Tex. 2001) ("[S]ince the law favors arbitration, the burden of proving a defense to arbitration is on the party opposing arbitration."). TES has also suggested that the arbitration agreement is ambiguous. That argument fails because it was not raised below and because TES is simply wrong.

*(1) TES cannot show that the agreement is unconscionable.*

"Unconscionability includes two aspects: (1) procedural unconscionability, which refers to the circumstances surrounding the adoption of the arbitration provision, and (2) substantive unconscionability, which refers to the fairness of the arbitration provision itself." *In re Halliburton*, 80 S.W.3d 566, 571 (Tex. 2002). The party asserting unconscionability bears the burden to prove it. *In re FirstMerit Bank*, 52 S.W.3d at 756.

TES argues that the arbitration agreement is unconscionable because it provides that "the decision of such arbitration shall be benign [sic] on all parties." (CR 118.) To make this argument, TES asserts that if the award must be "benign," the arbitrator cannot award any damages. (CR 119.) And according to TES, if the arbitrator cannot award any damages, then the arbitration provision is unconscionable because it strips away TES's substantive rights. (CR 119-20.)

This argument must fail for at least four reasons. First, TES ignores the fact that the provision states that the award must be

"benign on both parties." Therefore, even if TES were right about the meaning of the provision (which it is not), it would prevent an award of damages to either party. Since it would impact both parties equally, it is not clear how the provision would be unconscionable.

Second, TES's construction would create an absurd result. If arbitration actually resolves any "dispute, claim or question" it will be impossible for the decision to be "benign on both parties." If there is a dispute, claim or question, and it is resolved, then one party will prevail and the other will not. It is absurd to suggest that the parties created an arbitration procedure and then made it worthless by requiring that the decision be "benign on both parties." *See Hemyari v. Stevens*, 355 S.W.3d 623, 626 (Tex. 2011) ("Furthermore, under general rules of construction we avoid strictly construing an instrument's language if it would lead to absurd results.").

Third, the remainder of Article 10 makes clear that "benign" is simply a typographical error. Section 10.4 gives the arbitrator the power to "award to any party whose claim(s) are sustained such sums as the arbitrator (or majority of them) shall deem proper to

compensate such party for the time and expense of the arbitration proceeding, including any and all reasonable attorneys' fees, professional fees, and costs expended." (CR 42 (App. Tab B).) This power to award fees and costs is wholly incompatible with TES's suggestion that the arbitration award must be "benign."

Moreover, Section 10.2.1 provides that the arbitration award "shall be final, and judgment may be entered upon and in accordance with applicable law." (*Id.*) Again, this provision is incompatible with the suggestion that the arbitration award must be "benign." A benign arbitration award would not provide any basis for a judgment. This provision also indicates that the word "benign" in Section 10.1 was likely intended to be "binding."[6]

Fourth, even if the Court is not willing to look to other provisions to determine the meaning of "benign," it should refuse to enforce the clause as written. As discussed above, no arbitration

---

[6] Because TES's concern was that the word "benign" would prevent an award in favor of TES (CR 119-20), Greystone stipulated in the trial court that the word "benign" was supposed to be "binding." (CR 148.) Essentially, Greystone agreed that the arbitrators have the power to enter an award against Greystone.

award can be "benign" on both parties. Moreover, the instruction is inconsistent with the rest of Article 10. Therefore, the court should disregard the clause as unenforceable. Section 1.7 of the subcontract provides that

> Should any term … of this Subcontract, or any application thereof be held by a court of competent jurisdiction to be invalid, void, or unenforceable, all provisions, covenants or conditions of this Subcontract, and all interpretations thereof, not held invalid, void or unenforceable shall continue in full force and effect and shall in no way be affected, impaired, or invalidated thereby.

(CR 31 (App. Tab B).) Thus, this Court can disregard the unenforceable and absurd clause requiring that the award be "benign" and enforce the remainder of the arbitration provision. *See In re PolyAmerica, L.P.*, 262 S.W.3d 337, 360 (Tex. 2008) ("An illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement.").

Even without the clause that the award should be "benign" on all parties, Article 10 of the subcontract is a valid arbitration provision.

As discussed above, Section 10.1 is a binding arbitration provision.

Deleting the "benign" clause would not change that meaning:

> With the consent of the General Contractor, all disputes, claims or questions not resolved informally are subject to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. If General Contractor requests that any particular dispute, claim or question should be arbitrated, then arbitration shall be effected as provided hereinafter ["benign" clause deleted]. If, however, General Contractor elects not to consent to arbitration, then either or both parties may resort to an appropriate judicial action … .

(CR 42 (App. Tab B).) Moreover, as discussed above, the remainder of Article 10 provides that the arbitration decision will be "final" and that judgment may be entered on the decision. (*Id.*)

Additionally, the agreement specifically provides that the arbitration will be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. Those rules provide that "[p]arties to these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof." American Arbitration Association, Construction Industry Arbitration

Rule 54(c); *see Roehrs v. FSI Holdings, Inc.*, 246 S.W.3d 796, 807-08 (Tex. App.—Dallas 2008, pet. denied) (looking to AAA rules adopted in parties' arbitration agreement to determine full scope of the agreement). Thus, if the Court disregards the "benign" clause, the remainder of Article 10 is still a binding arbitration provision.

### *(2) TES's new ambiguity argument also fails.*

In response to Greystone's motion for a stay in this Court, TES asserted that "TES argued that the arbitration clause was, at the very least, patently ambiguous and therefore non-mandatory as a matter of law. The trial court agreed … ." (Appellee TES Electric, LP's Response to Appellant Greystone Multi-Family Builders, Inc.'s Motion to Stay Trial Proceedings Pending Interlocutory Appeal at 3.) Therefore, it seems likely that TES will make a similar argument in its response brief. This argument fails for two reasons. First, TES did not argue ambiguity below. Second, TES cannot show that the arbitration provision is ambiguous.

In response to Greystone's motion to compel arbitration, TES did not argue that the provision is ambiguous. Rather, TES argued that it

is not a binding arbitration provision. (CR 112.)[7] As discussed above, TES argued that it is instead a permissive arbitration provision. (*Id.*) While TES did assert that an arbitration agreement should be unambiguous (CR 113), it never claimed that the provision here was ambiguous. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 214 (Tex. 2011) ("Where an ambiguity has not been raised by the parties, the interpretation of a contract is a question of law.")

But even if TES had raised this argument below, it would still fail. Whether a contract is ambiguous is a question of law. *E.g., Anglo-Dutch Petroleum Int'l v. Greenberg Peden P.C.*, 352 S.W.3d 445, 449 (Tex. 2011). And a contract is not ambiguous if it "can be given a certain or definite legal meaning or interpretation." *El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 806 (Tex. 2012). As discussed in section 1.A.(1) above, the agreement can be given a definite interpretation. TES's suggested construction is not reasonable because it ignores the second sentence of section 10.1. Therefore, if

---

[7]     At the hearing, TES did not argue that the clause is ambiguous. To the contrary, TES argued that that its construction was the only reasonable construction of the provision. (2 RR 14.)

the trial court refused to enforce the agreement because the court found it was ambiguous, the trial court erred.

## 2. TES's claims are within the broad scope of the arbitration agreement.

Because there is a binding arbitration agreement, the trial court erred in refusing to compel arbitration if TES's claims fall within the scope of the parties' agreement. *See AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 195 (Tex. App.—Houston [14th Dist.] 2003, no pet.) ("Once the party seeking arbitration establishes that an agreement exists under the FAA and that the claims raised are within the agreement's scope, the trial court has no discretion but to compel arbitration."). In the trial court, TES argued that the arbitration provision is narrow and that TES's claims do not fall within its scope. (CR 120.) TES also argued that the arbitration provision does not apply to claims that arose after the subcontract was terminated. To the extent the trial court agreed with either of these arguments, the trial court erred.

### A. The arbitration provision broadly applies to all disputes, claims, or questions.

Although the language of the arbitration provision here is not the same as other broad arbitration provisions, it does refer to arbitration of "all disputes, claims or questions not resolved informally." (CR 42 (App. Tab B).) The reference to "all disputes, claims or questions" makes this a broad arbitration provision. *See FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("Broad arbitration clauses…are not limited to claims that literally 'arise under the contract,' but rather embrace *all disputes* between the parties having a significant relationship to the contract regardless of the label attached to the dispute." (emphasis added)). All of TES's claims here either arise under or are related to the subcontract. Therefore, TES's claims are within the scope of the arbitration provision.

TES argues that the failure to use a "standard" broad arbitration clause means that the provision is narrow and limited to claims that arise under the contract. (CR 121.) This argument fails for at least three reasons. First, the cases on which TES relies refer to "standard"

language or a variation of standard phrases. *See Beckham v. William Bayley Co.*, 655 F. Supp. 288, 291 (N.D. Tex. 1987). The phrase "all disputes, claims or questions" is, at a minimum, a variation of the standard phrase "[a]ny controversy or claim arising out of or relating to this contract." *Id.* Moreover, the use of the word "all" clearly indicates an intent that the provision apply broadly. *See In re Hornbeck Offshore Corp.*, 981 F.2d 752, 755 (5th Cir. 1993) (concluding that a provision requiring arbitration of "any dispute" between the parties is a broad provision).

Second, the cases on which TES relies merely state that failure to use "standard" language *may* indicate an intent that the clause be limited to claims arising under the contract. *See Belmont Constructors, Inc. v. Lyondell Petrochemical Co.*, 896 S.W.2d 352, 358 (Tex. App.—Houston [1st Dist.] 1995, no pet.). Moreover, in *Belmont*, the issue was whether the provision was a binding arbitration agreement, not whether it was a broad provision or a narrow one. *Id.*

TES also relied on the Fifth Circuit's decision in *The Rice Co. (Suisse), S.A. v. Precious Flowers, Ltd.*, 523 F.3d 528, 536 (5th Cir. 2008),

for the proposition that a clause that required arbitration of "any dispute" was not a broad arbitration provision. (CR 121.) But the issue in *The Rice Co.* was not whether the clause was broad enough to encompass certain claims, but whether it was broad enough to encompass certain *parties*. The full quote from the Fifth Circuit's opinion is:

> The New York arbitration clause is not broad, as it provides "[t]hat should any dispute arise *between Owners and Charterers*, the matter shall be referred to three persons at New York."

523 F.3d at 536 (emphasis in original). The issue was whether this provision required arbitration of a dispute between parties other than the Owner and the Charterer. *Id.* Thus, *The Rice Co.* cannot aid TES's arguments.

Third, TES's argument would replace proper contract construction with a search for "magic words." The question for this Court is the meaning of the words that the parties chose to include in the subcontract. *E.g., RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) ("When construing a contract, our primary concern is to ascertain the intentions of the parties as expressed in the

document. We begin our analysis with the language of the contract because it is the best representation of what the parties mutually intended." (internal citations omitted)). Those words broadly require arbitration of "all disputes, claims, or questions." (CR 42 (App. Tab B).) And they are similar to other arbitration provisions that have been recognized as "broad:"

- *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 202 (Tex. 2007) (finding that an arbitration clause was broad because it required arbitration of "all controversies which may arise between us")

- *950 Corbindale, L.P. v. Kotts Capital Holdings Ltd. P'ship*, 316 S.W.3d 191, 195 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (noting that "any dispute arising between the parties" is a broad arbitration provision)

- *FD Frontier Drilling*, 438 S.W.3d at 695 ("Generally, when an arbitration provision uses the language 'any dispute,' it is considered broad.")

- *Serv. Corp. Int'l v. Lopez*, 162 S.W.3d 801, 811 (Tex. App.—Corpus Christi 2005, no pet.) (finding that "any claim you may have against the seller shall be resolved by arbitration" is a broad arbitration provision)

- *Kline v. O'Quinn*, 874 S.W.2d 776, 782 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding that the phrase "a dispute that arises among the parties," in the absence of limiting language is a broad arbitration provision)

Nothing in the language of Section 10.1 indicates an intent to limit the disputes, claims, or questions to those "arising under" the subcontract. To find such an intent simply because the parties did not use "standard" language would improperly elevate form over substance.

In fact, *The Rice Co.*, a case on which TES relies, specifically holds that "[s]pecific words or phrases alone may not be determinative." 523 F.3d at 536. There is no indication in the language here to limit the arbitration provision to certain types of claims. *Id.* (holding that "words of limitations would indicate a narrower clause").

Therefore, TES's authorities do not support its argument that the failure to use "standard" language automatically means that the arbitration provision is narrow. Without limitation, Section 10.1 requires arbitration (at Greystone's request or with Greystone's consent) of "all disputes, claims, or questions."[8] Because the

---

[8] In the trial court, TES also selectively quoted from Section 10.1 to argue that it applies only to "particular dispute[s], claim[s], or question[s]." (CR 121.) But the quoted language is not a limitation on the types of disputes that must be arbitrated. Rather, it refers to Greystone's right to chose which disputes are arbitrated. (CR 42 (App. Tab B).)

arbitration provision is broad, it encompasses all claims that relate to the subcontract, regardless of whether they sound in contract or in tort. *See FD Frontier Drilling,* 438 S.W.3d at 695 (holding that broad arbitration clause encompassed tort claims).

Here, all of TES's claims are related to the subcontract. None of the claims could arise in the absence of the subcontract agreement between Greystone and TES. *See id.* The fraud claims and unfair competition claims allegedly arise from the parties' conduct related to the subcontract. (CR 8.) The Theft Liability Act claim is based on the allegation that Greystone induced TES to continue to provide services under the subcontract. (CR 11.) TES's declaratory judgment claim seeks a declaration about TES's rights under the subcontract. (CR 11.) The claims against TES's former employees (which TES alleges against Greystone through its conspiracy claim) are based on the employees' actions in connection with work on the subcontract. (CR 9-11.) And TES's attempt to foreclose alleged materialman's liens is related to performance of the subcontract. (CR 12.) Therefore, the arbitration provision applies to all of the claims in TES's petition.

## B. The arbitration provision applies to tort claims that arose after the subcontract was terminated.

TES also argued below (without citing any authority) that the arbitration provision did not apply to tort claims that arose after the subcontract was terminated. (CR 122.) But Texas courts have held that an arbitration provision in a contract survives the termination of that contract, even if the contract does not have a savings clause. *See Cleveland Constr.* 359 S.W.3d at 854 ("[A]n arbitration agreement contained within a contract survives the termination or repudiation of the contract as a whole." (quoting *Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. App.—San Antonio 2000, pet. dism'd)).) Therefore, if the arbitration provision is broad enough to encompass TES's tort claims (which it is), it encompasses all of the tort claims, including those that allegedly arose after the subcontract was terminated.

## CONCLUSION AND PRAYER

The only reasonable reading of the arbitration provision in the parties subcontract agreement is that Greystone has the right to decide whether a claim should be arbitrated. If TES initiates arbitration, Greystone must consent. If TES initiates litigation,

Greystone can request arbitration instead. TES's arguments that there is no enforceable, binding arbitration provision are unavailing.

Moreover, although the provision does not use typical broad language, it is a broad arbitration provision. It expressly provides that "all" disputes that are not resolved informally are subject to arbitration. Thus, the clause is broad enough to encompass TES's claims here.

Therefore, Greystone respectfully requests that the Court reverse the trial court's order denying Greystone's motion to compel arbitration. The Court should also enter judgment that the arbitration provision is enforceable, that TES's claims are within the scope of the arbitration provision, and that TES is required to arbitrate. The Court should therefore direct the trial court to compel arbitration and to stay the trial proceedings pending the results of the arbitration. Greystone further requests general relief.

Respectfully submitted,

THOMPSON & KNIGHT LLP


BY: /s/ Richard B. Phillips, Jr.
  Richard B. Phillips, Jr.
  State Bar No. 24032833
  rich.phillips@tklaw.com

  One Arts Plaza
  1722 Routh Street, Suite 1500
  Dallas, Texas 75201
  Phone: (214) 969-1700
  Fax: (214) 969-1751

  J. Michael Bell
  State Bar No. 02079200
  michael.bell@tklaw.com

  Megan H. Schmid
  State Bar No. 24074383
  megan.schmid@tklaw.com

  333 Clay Street, Suite 3300
  Houston, Texas 77002
  Phone: 713-654-8111
  Fax: 713-654-1871

  **COUNSEL FOR APPELLANT
  GREYSTONE MULTI-FAMILY
  BUILDERS, INC.**

## CERTIFICATE OF COMPLIANCE

This brief was prepared using Microsoft Word 2010 in Book Antiqua font. The font size in the text is 14-point. The font size in the footnotes is 13-point. This brief contains 5,631 words, not counting the sections excluded by TEX. R. APP. P. 9.4(i)(1).

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.


## CERTIFICATE OF SERVICE

On this 6th day of October, 2015, a true and correct copy of the foregoing brief has been served on the following counsel for Appellee by electronic service:

Ashish Mahendru
Darren A. Braun
Mahendru, P.C.
639 Heights Boulevard
Houston, Texas 77007

*/s/ Richard B. Phillips, Jr.*
Richard B. Phillips, Jr.

TAB
A

4/30/2015 4:11:40 PM
Chris Daniel - District Clerk
Harris County
Envelope No: 5107206
By: TORRES, MELISSA D
Filed: 4/30/2015 4:11:40 PM

Pgs-1

CPROY
STPRY

CAUSE NO. 2015-03393

| | | |
|---|---|---|
| TES ELECTRIC, LP | § | IN THE DISTRICT COURT OF |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| VS. | § | HARRIS COUNTY, TEXAS |
| | § | |
| GREYSTONE MULTI-FAMILY | § | |
| BUILDERS, INC. , KEN TURNER, | § | |
| AND MANUEL SANCHEZ, | § | |
| | § | 125th JUDICIAL DISTRICT |
| *Defendants.* | | |

---

**ORDER DENYING DEFENDANT GREYSTONE MULTI-FAMILY BUILDERS, INC.'S MOTION TO COMPEL ARBITRATION AND MOTION TO STAY**

---

On this day, the Court considered Defendant Greystone Multi-Family Builders, Inc.'s Motion to Compel Arbitration and Motion to Stay. After considering the pleadings and the arguments of counsel, the Court is of the opinion that the motions should be DENIED.

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Defendant's Motion to Compel Arbitration and Motion to Stay are both DENIED in their entirety.

Signed:
7/6/2015

_____
HON. KYLE CARTER
JUDGE PRESIDING

1

155

TAB
B

MULTI-FAMILY
# GREYSTONE
## BUILDERS
4 SAN JOAQUIN PLAZA, #350
NEWPORT BEACH, CA 92660
(949) 566-9230 FAX (949) 566-9266



| | |
|---|---|
| Contract Number: | 015-007 |
| Job Number: | 1020-0015 |
| Cost Code: | xl-6100 |
| Trade: | Electrical |

## SUBCONTRACT AGREEMENT

THIS SUBCONTRACT AGREEMENT ("Subcontract") is made this **18th day of October, 2012** by and between Greystone Multi-Family Builders, Inc. (hereinafter referred to as "General Contractor") and **TES Electric, LP, 1723 Eldridge Rd. Ste E, Sugar Land, TX 77478 Phone:281-242-0772, Fax: 281-242-9609** (hereinafter referred to as "Subcontractor").

### RECITALS:

A.     The General Contractor has been engaged by the Owner pursuant to a separate construction contract (the "Prime Contract") for the following building or project: **807 S. Post Oak Lane** ("Project").

B.     The General Contractor is undertaking the general construction work for this project pursuant to certain plans, and all necessary plans have been examined by the Subcontractor.

C.     Subcontractor agrees to perform a portion of the work required to be performed by the General Contractor on the Project pursuant to the terms of this Subcontract. The work to be performed by Subcontractor is described on the Scope of Work attached hereto as **EXHIBIT "B"** (the "Work").

D.     The Subcontractor desires to perform the Work and to supply the labor, material and equipment as set forth in the Subcontract in accordance with the schedule as set forth herein using Subcontractor's best skill and judgment and to cooperate with the General Contractor, architect, engineer and other consultants in furthering the interest of the Owner.

NOW, THEREFORE, in consideration of the mutual benefits arising therefrom, and for other good and valuable consideration, it is hereby agreed as follows:

### ARTICLE 1
### Scope of Work and Contract Documents

1.1     Scope of Work: Subcontractor agrees to furnish all labor, materials, equipment and services of every kind and nature whether or not specified in the Contract Documents (as hereinafter defined in Section 1.2), for the proper and timely completion of the Work. All incidental work reasonably necessary to complete the Work shall be performed by Subcontractor, notwithstanding the same may have been omitted from the Scope of Work or the Contract Documents, General Contractor engages Subcontractor as an independent contractor to perform the Work. **(See Attached EXHIBIT "B" Scope of Work)**

1.2     Definition: The documents constituting the Subcontract between the General Contractor and Subcontractor (and herein collectively referred to as the "Subcontract" or "Contract Documents") consist of the following:

1.2.1     This Subcontract;

1.2.2     All plans and specifications for this project.

1.3     Incorporation by Reference: The Recitals set forth above and each of the items set forth in Section 1.2.1 through Section 1.2.2 inclusive, are hereby incorporated by reference and made a part of this Subcontract.

1.4     True Meaning of Contract Documents: In the event that any interpretation of the Contract Documents is required, any decision made by the General Contractor shall be final and conclusive for all purposes.

1.5     Merger: This Subcontract constitutes the entire agreement between the parties. All negotiations, proposals, modifications and agreements prior to the date hereof are merged into this agreement and superseded hereby. There are no agreements or understandings other than as set forth in this Subcontract. Subcontractor acknowledges that in executing this Subcontract, it has not been induced, persuaded or motivated by may promise or representation made by the other party, unless the same shall be expressly set forth herein.

1.6     Modification of Subcontract: No modification of this Subcontract shall be valid or binding unless such modification shall be in writing, duly dated and signed by the parties hereto.

1.7     Partial Invalidity: Should any term, condition, covenant or provision of this Subcontract, or any application thereof, be held by a court of competent jurisdiction to be invalid, void or unenforceable, all provisions, covenants or conditions of this Subcontract, and all applications thereof, not held invalid, void or unenforceable, shall continue in full force and effect and shall in no way be affected, impaired or invalidated thereby.

1.8     Corporate Authorization: The parties executing this Subcontract acknowledge and represent that all corporate authorization has been obtained for the execution of this Subcontract and for the compliance with each and every term hereof.

1.9     Governing Law: The terms and conditions this Subcontract shall be constructed in accordance with and governed by the laws of the State of Texas and the parties hereto acknowledge that any arbitration required or permitted hereunder shall take place in Travis County, Texas; and any judicial action brought hereunder shall be brought in Travis County, Texas.

Greystone Multi-Family Builders, Inc.

TES Electric, LP

EXHIBIT A-1

1.10   Captions and Pronouns: The captions appearing throughout this Subcontract and the use of pronouns indicating gender are descriptive only and for convenience, and in no way whatsoever define, limit or describe the scope or intent of this Subcontract, or in any way effect the Subcontract.

1.11   Assignment: Subcontractor shall not assign this Subcontract, nor subcontract the whole or any part of the Work to be performed hereunder without prior written consent of the General Contractor. General Contractor may assign and/or transfer the whole or part of this Subcontract and/or it rights hereunder to any individual or entity which it may designate.

1.12   Nonwaiver: The failure of a party hereunder (the "Non-Defaulting Party"), to notify the other party (the "Defaulting Party"), of any default by such Defaulting Party under the Contract Documents shall not be deemed to be a waiver by the Non-Defaulting Party, of any other default or any continuing default by the Defaulting Party, nor of, the Non-Defaulting Party's right to declare a default for any such other or continuing breach, and the failure of the Non-Defaulting Party, to insist upon strict performance of any of the terms, covenants or conditions of the Contract Documents, or to exercise any option in the Contract Documents in any one, or more instances, shall not be construed as a waiver or relinquishment of any such terms, covenants, conditions or options, but the same shall be and remain in full force and effect.

1.13   Drafting of Subcontract Agreement: This Subcontract Agreement shall be construed without regard to any presumptions or other rule requiring construction against the party who caused this Subcontract to be drafted.

1.14   No Delay By Subcontractor: Notwithstanding the fact that a dispute, controversy or question shall have arisen in the interpretation of any provision of this Subcontract, the performance of any Work, the delivery of any material, the payment of any monies to Subcontractor, or otherwise, the Subcontractor agrees that it will not directly or indirectly stop or delay all or any part of the Work on its part required to be performed hereunder, or stop or delay the delivery of any materials on its part required to be furnished hereunder, pending the determination of such dispute or controversy, regardless of whether such controversy, dispute or question is subject to arbitration or litigation.

1.15   Prior Work: Notwithstanding the fact that this Subcontract is executed as of the date first set forth above, the parties recognize that a portion of the Subcontractor's Work may have been performed prior to such date, all of which Subcontractor's Work shall be governed by the terms and conditions of the Subcontract and shall be deemed to be a part of the Work. Subcontractor shall not be entitled to any compensation for such prior activities and services except as expressly provided herein. Without limiting the foregoing, all of Subcontractor's liabilities and obligations to General Contractor hereunder shall apply to all work and services provided by Subcontractor for the Project prior hereto, notwithstanding the fact that such work or services may have been performed prior to the date hereof pursuant to prior negotiations, representations, agreements, understandings or otherwise.

1.16   Taxes: Subcontractor shall pay and accepts liability for all taxes and contributions imposed or required by any law for any employment insurance, pensions, old age retirement funds, or similar purpose required of him and his Sub-subcontractors, including, without limitation, taxes and contributions required under the Federal Social Security Act and the unemployment compensation law or any similar law of any state.

1.17   Fair Employment Practices: The Subcontractor agrees to be bound by and comply with all applicable Fair Employment Practices, Provisions and Regulations of Federal, State or other governmental authority having jurisdiction including the provisions of Executive Order No. 11246, and Title VII of the Civil Rights Act of 1964, including amendments or revisions thereof, relating to nondiscrimination in employment, and any affirmative action provisions contained in the Contract Documents.

## ARTICLE 2
### Subcontractor Representations

By entering into this Subcontract, Subcontractor represents and warrants that:

2.1   Subcontractor's Skill and Judgment: Subcontractor agrees to furnish its best skill and judgment in discharging its obligations hereunder and to complete the Work in a good and workmanlike, expeditious and economical manner, free from defects. In addition, Subcontractor acknowledges that the various design elements of the Work is solely Subcontractor's responsibility.

2.2   Local Conditions: Subcontractor is familiar or has familiarize itself with (i) the conditions affecting construction at the Project site where the Work is to be performed; and (ii) the work to be performed by other subcontractors on the Project related to the Work either in nature or relevant in connection with the time for performance of the Work.

2.3   Site Inspection: Independent of any information provided by Owner or General Contractor, Subcontractor has inspected the Project site and is satisfied as to the conditions under which the Work is to be performed and the availability of labor and materials; Subcontractor has coordinated its inspection and observations at the Project site with the bid documents and Contract Documents.

2.4   Review of Contract Documents: Subcontractor has reviewed the Contract Documents in detail and represents there are no areas of ambiguity, confusion or conflict and Subcontractor is fully familiar with all terms, general and specific conditions and obligations of the Contract Documents. Subcontractor enters into this Subcontract based upon its own independent investigation of all such matters and not based on any discussions, statements or representations of General Contractor or Owner.

2.5   Licensing of Subcontractor: Subcontractor is properly licensed by the applicable public agencies, to perform the services included in this Subcontract, as required by law.

2.6   Subcontractor Price: The Subcontract Price, as set forth In Article 6, is the maximum amount to be paid to Subcontractor for all Work to be performed by Subcontractor, including additional labor and materials required because of detailing and refinement of the plans and specifications related to the Work, and all risks, hazards, conditions, and difficulties in connection with the Work whether or not foreseeable.

2.7   Financial Solvency, Capability and Qualification of Subcontractor: Subcontractor (i) is financially solvent, able to pay its debts as they mature, and possesses sufficient working capital to complete this Subcontract; (ii) is able to furnish the plant, tools, materials, supplies, equipment and labor, and is experienced in and competent to perform the Work contemplated by this Subcontract; and (iii) is authorized to do business in the State of Texas.

2.8   Compliance with Drawings, Plans and Specifications: Subcontractor's Work will comply with the Contract Documents as may be modified.

2.9   Materials to be Furnished: All materials furnished and used in connection with the Work shall be new, first quality and approved by the General Contractor. Subcontractor shall cause all materials and other parts of the Work to be readily available as and when required or needed for or in connection with the construction, furnishing and equipping of the Project.

9.2.2 In the event that Subcontractor defaults, General Contractor may exercise any and all remedies available hereunder at law or equity including, but not limited to, termination of this Subcontract; Subcontractor shall be entitled to notice, as set forth in Article 11 and one (1) business day to cure for the first two defaults (such notice and opportunity to cure shall not limit or delay the commencement of any liquidated damages for delay imposed by this contract), but thereafter General Contractor may exercise any remedy without giving notice or opportunity to cure to Subcontractor. Upon termination because of Subcontractor default the obligation of General Contractor to Subcontractor shall be limited to the difference between the value of the Work performed to the date of termination less the sum of (i) the actual cost incurred by General Contractor or Owner (including a markup of 15% for overhead and profit on such costs) to complete the Work (whether performed by a third party or Contractor); and (ii) the damages incurred by General Contractor including any losses indemnified against by Subcontractor. Any amount owed to Subcontractor by General Contractor after termination for a default by Subcontractor shall not be due until completion of the Work by General Contractor or another subcontractor. Subcontractor shall be liable for the payment of any amount by which the cost incurred by General Contractor to complete the Work set forth in Section 9.2.(i) above, may exceed the unpaid balance of the Subcontract Price.

## ARTICLE 10
### Arbitration

10.1 Arbitration by General Contractor Consent: With the consent of General Contractor, all disputes, claims or questions not resolved informally are subject to arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association. If General Contractor requests that any particular dispute, claim or question should be arbitrated, then arbitration shall be effected as provided hereinafter, and the decision of such arbitration shall be benign on all parties. If, however, General Contractor elects not to consent to arbitration, then either or both parties may resort to an appropriate judicial action, with the prevailing party being entitled to receive all reasonable attorneys' fees, court costs and other fees, expenses and costs incurred on account of such dispute, claim or question. This arbitration agreement shall be governed by the Federal Arbitration Act (9 U.S.C. Sections 1-16) to the exclusion of any inconsistent state law, regulation or judicial decision.

10.2 Procedures for Arbitration: In the event of arbitration, the following procedures shall be employed:

10.2.1 The award rendered by the arbitrator(s) shall be final, and judgment may be entered upon and in accordance with applicable law.
10.2.2 Notice of the demand for arbitration shall be served and filed in writing with the other parties to this Subcontract. The demand shall be made within the reasonable time after the dispute has arisen, but in no case shall this demand be later than the applicable statute of limitations.

10.3 Site of Arbitration: The venue for the arbitration shall be in Travis County, Texas. The arbitration hearing shall be held within forty-five (45) days after the appointment of the arbitrator(s).

10.4 Arbitrator's Discretion: The arbitrator(s) is authorized to award to any party whose claim(s) are sustained such sums as the arbitrator (or majority of them) shall deem proper and shall compensate such party for the time and expense of the arbitration proceeding, including any and all reasonable attorneys' fees, professional fees and costs expended, and, if the arbitration was demanded without reasonable cause, the arbitrator(s) may also award further damages in the discretion of the arbitrator(s). Unless otherwise agreed between the parties in writing, the arbitrator(s) shall fix the arbitrator(s) own compensation and shall assess such compensation, costs and charges of the proceedings upon the parties in the arbitrator's own discretion.

10.5 Subcontractor's Duties During Arbitration Proceedings: Subcontractor may suspend work during arbitration if the nature of the arbitrated matter concerns Contractor or Owner's failure to pay Subcontractor in accordance with the terms of the Subcontract.

10.6 Subcontractor Participation in Arbitration Between Other Parties: At the request of General Contractor, Subcontractor shall participate in any arbitration between Owner, General Contractor, architect, consultants, other contractors or subcontractor. In the event that General Contractor and Owner or any other parties which ware not the Subcontractor arbitrate matters relating to this Subcontract, it shall be the responsibility of the Subcontractor to prepare and present the General Contractor's case to the extent the arbitration were related too this Subcontract.

## ARTICLE 11
### Service of Notices

Any and all notices, demands or requests required or appropriate under this Subcontract shall be given in writing either by personal delivery, confirmed facsimile, or by registered or certified, mail, return receipt requested. If such notice of demand be served personally, service shall be conclusively deemed made at the time of such personal service. If such notice or demand be served by registered or certified mail in the manner provided, service shall be conclusively deemed made seventy-two (72) hours after the deposit thereof in the United States Mail addressed to the party to whom such notice or demand is to be given. All notices, demands or requests must be addressed to the following addresses:

TO SUBCONTRACTOR:   **TES Electric, LP**
**1723 Eldridge Rd. Ste E**
**Sugar Land, TX 77478**

TO GENERAL CONTRACTOR:   **Greystone Multi-Family Builders, Inc.**
**4 San Joaquin Plaza, Suite 350**
**Newport Beach, CA. 92660**

TO OWNER:   **TPG(Post Oak) Acquisition, LLC**
**30950 Rancho Viejo Road, Suite 200**
**San Juan Capistrano, CA 92675**

## ARTICLE 12
### Subordination

All lien rights of whatever kind and nature of Subcontractor for the Work shall be subordinate, junior and inferior to the lien created by a lender furnishing financing for the Project. Subcontractor as a condition to receiving any payment hereunder shall execute a subordination of its lien, in recordable form, in form and substance acceptable to General Contractor.

Greystone Multi-Family Builders, Inc.
Greystone Subcontract Texas POL Final Wrap Version – 10.18.12

TES Electric, LP

42

## ARTICLE 13
### Attorneys' Fees

In the event the parties become involved in litigation or arbitration with each other arising out of this Subcontract or other performance thereof in which the services of an attorney or other expert are reasonably required, the prevailing party shall be fully compensated for the cost of its participation in such proceedings, including the cost incurred for attorneys' fees and experts' fees. Unless judgment goes by default, the attorneys' fee award shall not be computed in accordance with any court schedule, but shall be such as to fully reimburse all attorneys' fees actually incurred in good faith, regardless of the size of a judgment, it being the intention of the parties to fully compensate for all attorneys' fees and experts' fees paid or incurred in good faith.

## ARTICLE 14
### Waiver of Jury Trial

GENERAL CONTRACTOR AND SUBCONTRACTOR HEREBY VOLUNTARILY, KNOWINGLY, IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY RIGHT TO HAVE A JURY PARTICIPATE IN THE RESOLUTION OF ANY DISPUTE (WHETHER BASED UPON CONTRACT, TORT OR OTHERWISE) BETWEEN GENERAL CONTRACTOR AND SUBCONTRACTOR ARISING OUT OF OR IN ANY WAY RELATED TO THIS SUBCONTRACT.

_____          _____
General Contractor                                    TES Electric, LP

## ARTICLE 15
### Disputes

General Contractor-Subcontractor Disputes: By placing their initials in the following spaces [General Contractor's Initials _____ Subcontractor's Initials _____], General Contractor and Subcontractor acknowledge that the Prime Contract contains an agreement whereby Owner and General Contractor may elect to arbitrate disputes. Only in the event (i) Owner and General Contractor elect arbitration under the Prime Contract or (ii) the General Contractor and Subcontractor have agreed to arbitration by the terms of this Subcontract, shall this Paragraph control the dispute resolution between the parties hereto (including, without limitation, any dispute between any successors and/or assigns of the parties hereto). In such event, any controversy regarding the breach or interpretation of this Subcontract shall be resolved by arbitration. The Owner, General Contractor, Subcontractor and his Sub-subcontractors, material suppliers, and other parties concerned with the construction of the Project are bound, each to the other, by this arbitration clause, provided such party has entered into this Subcontract, into a contract which incorporates this Subcontract by reference, or any other agreement to be bound by this arbitration clause, or has performed all or any part of Subcontractor's Work. Arbitration shall be held in accordance with the arbitration provision contained in the Prime Contract, if there is any such arbitration provision. If there is no arbitration provision in the Prime Contract, and the General Contractor and Subcontractor have agreed to arbitration by the terms of this Subcontract, then arbitration shall be had in accordance with the Construction Industry Rules of the American Arbitration Association which are in effect at the time of the arbitration. Upon the demand of the arbitrator or any party to an arbitration initiated under the arbitration provisions of the Prime Contract, Subcontractor and all parties bound by this arbitration provision agree to join in and become parties to and be bound by such arbitration proceedings. Any award must be based upon the terms herein and the rules of law applicable to the facts of such dispute. This agreement so to arbitrate shall be specifically enforceable under the prevailing arbitration law. The parties, however, reserve the right to conduct discovery under applicable law with regard to any claim filed and irrespective of the Construction Industry Arbitration Rules of the American Arbitration Association and/or prevailing statutory law. The award rendered by the arbitrators shall set forth their findings of the facts and shall be final and binding, and the judgment may be entered in any court having jurisdiction thereof. Under no circumstances shall the arbitrator or arbitrators have any power, jurisdiction, or authority to award punitive or exemplary damages to any party.

Notwithstanding any contrary provision above concerning venue and forum, if any dispute between Owner and General Contractor shall be submitted to arbitration or litigation, the General Contractor may, by written notice to Subcontractor before the actual commencement of any such arbitration heating or trial between or involving Owner and General Contractor, require that the question of the responsibility of the Subcontractor and/or of the rights and obligations of the General Contractor and Subcontractor with respect to one another, and/or any disputes, pending or otherwise, between General Contractor and Subcontractor (whether or not in arbitration), be submitted likewise, before the same tribunal and determined collaterally to the decision upon the dispute between General Contractor and the Owner to the end that the entire controversy shall be resolved at once. In such an event, Subcontractor agrees to fully cooperate and not to interfere with the rights and election of General Contractor hereunder. The decision of the arbitration or litigation shall be final and in the case of arbitration, may be entered as a judgment by any court of competent jurisdiction. Subcontractor agrees to any joinder or consolidation in any arbitration instituted by any party to a contract, subcontract or purchase order with the General Contractor, or with any contractor, subcontractor or design consultant to the Project.

IN WITNESS WHEREOF, Subcontractor and General Contractor have executed this Subcontract as of the date and year first above written.

GENERAL CONTRACTOR:
GREYSTONE MULTI-FAMILY BUILDERS, INC.

By: _____

Name: DAVID B. McMAHAN

Title: President

Date: 11.27.12

SUBCONTRACTOR:
TES ELECTRIC, LP

By: _____

Name: William Gillespie

Title: President

Date: 11-8-2012

Taxpayer I.D. Number: 26-1434049

Subcontractor's License Number: «License» 25081