**Opinion issued May 1, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-01160-CV

———————————

**FD FRONTIER DRILLING (CYPRUS), LTD.; FRONTIER DRILLING USA, INC.; FRONTIER DRILLING AS; AND NOBLE DRILLING (U.S.), L.L.C., Appellants**

**V.**

**STEVE DIDMON, Appellee**

**On Appeal from the 334th District
Harris County, Texas
Trial Court Case No. 2011-00127**

**O P I N I O N**

In this interlocutory appeal, appellants FD Frontier Drilling (Cyprus), Ltd.,

Frontier Drilling USA, Inc., Frontier Drilling AS, and Noble Drilling (U.S.),

L.L.C. [collectively, "the Frontier entities"] contend the trial court erred by denying their motion to compel arbitration and stay the trial court proceedings. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (Vernon Supp. 2011) ("In a matter subject to the [FAA], a person may take an appeal . . . to the court of appeals from the judgment or interlocutory order of a district court, county court at law, or county court under the same circumstances that an appeal from a federal district court's order or decision would be permitted by 9 U.S.C. Section 16."); 9 U.S.C. § 16(a)(1)(C) (2006) (FAA provision permitting appeals of orders denying application to compel arbitration); *CMH Homes v. Perez*, 340 S.W.3d 444, 448–49 (Tex. 2011) (explaining that section 51.016 provides for interlocutory appeals in FAA cases so long as "it would be permitted under the same circumstances in federal court under section 16"). We reverse and remand.

## BACKGROUND

### A. *The Parties and their Relationships*

Appellee, Steve Didmon,[1] filed suit alleging that he sustained personal injuries while employed as a subsea engineer above the *D/S Frontier Phoenix* on Deecember 11, 2009, while the vessel was operating offshore Singapore.

Frontier Drilling AS ["Frontier AS"] is a foreign company based in Norway and was the owner of the *D/S Frontier Phoenix* at the time of the alleged accident.

---

[1]     Didmon is a citizen of Australia and has had residences in Australia, Vietnam, and Singapore.

Frontier Drilling USA ["Frontier USA"] is a wholly owned subsidiary of Frontier AS and is based in Houston, Texas. Frontier Drilling (Cyprus), Ltd. ["Frontier Cyprus"] is a unit of Frontier US, and when a Frontier drilling vessel is in foreign waters, its crew is on Frontier Cyprus's payroll. At the time of the alleged accident, the *D/S Frontier Phoenix* was operating near Singapore, thus Didmon was being paid by Frontier Cyprus. After the incident made the basis of this suit, Noble Corporation, parent company to defendant Noble Drilling (U.S.), acquired the Frontier entities by way of merger.

## B. The Arbitration Agreements

As a new hire, Didmon signed an Expatriate Employment Agreement ["EEA"] with Frontier Cyprus, which contained the following arbitration clause:

> Any dispute arising out of or in connection with this contract, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration in Singapore in accordance with the Arbitration Rule of the Singapore International Arbitration Centre ("SIAC Rules") for the time being in force, which rules are deemed to be incorporated by reference in this clause.

The EEA also provides, in part, "This Agreement constitutes the entire agreement between the EMPLOYEE [Didmon] and the COMPANY [Frontier Cyprus], contains all the terms and conditions of employment, and may not be amended except in writing, properly subscribed by both the COMPANY [Frontier Cyprus] and the EMPLOYEE [Didmon]." The EEA did not reference any of the other Frontier entities.

3

One day after he signed the EEA, Didmon signed an Alternative Resolution Agreement ["ADR"], along with several other "new hire" forms. The ADR recites that it is between Didmon and "Frontier Drilling and all related subsidiaries and companies." The ADR provides as follows:

> The Company and I mutually consent to the [sic] resolve all controversies or claims ("claims"), whether or not arising out of my employment (or its termination), that the Company may have against me or that I may have against the Company or against its agents, employees, directors, or officers in their capacity as such or otherwise. The ***claims covered by the Agreement are not limited to but include***, claims for compensation or wages due; claims for breach of any covenant or contract (expressed or implied); claims for discrimination (including, but not limited to, race, sex, religion, national original, age, marital status, or medical condition, handicap or disability); ***tort claims***; claims for benefits (except where an employee benefit or pension plan specifies that its claims procedure shall culminate in an arbitration procedure different from this one), and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except for claims excluded in the following paragraph. (Emphasis added).

The ADR then excluded claims for workers compensation benefits and claims by the company for injunction or other relief for unfair competition and/or the unauthorized use of trade secrets or confidential information.

## C. The Lawsuit and Related Proceedings

On January 3, 2011, Didmon filed suit against the Frontier entities in the 334th District Court of Harris County, Texas, asserting claims under the Jones Act and general maritime law for his personal injuries. Specifically, he alleged negligence, gross negligence, and claims for maintenance and cure against all the

4

defendants, referring to them globally as "the Frontier Defendants." He also alleged alter ego and agency liability.

The defendants, minus Frontier AS, who had not yet been served, answered the state court suit and asserted a right to arbitration in their answer. Didmon filed an amended petition, adding identical claims against Frontier AS.

The defendants then removed the case to federal court, claiming their right to arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. In their motion the defendants alleged that arbitration was required under the terms of the ADR Agreement. *See Didmon v. Frontier Drilling (USA), Inc.*, No. H-11-2051, 2012 WL 951544 (S.D. Tex. Mar. 19, 2012). Accordingly, the defendants filed a motion to dismiss, or alternatively stay, the proceedings pending resolution by arbitration. After briefing from the parties, the federal district court denied the defendants' motion to dismiss, and remanded the case to state court.

### D. The Federal District Court's Memorandum Opinion

In its opinion, the federal district court held that under the EEA, any amendments had to be in writing and "subscribed" by both parties. *Id.* at *1. The court further held that "subscribed" meant signed, and, because the ADR agreement was signed only by Didmon, and not by any Frontier entity, it did not validly amend the EEA. *Id.* at *3. In so holding, the Court further stated:

5

> Both Didmon and Frontier Cyprus signed the Employment Agreement. That Agreement only requires disputes about its "existence, validity or termination" to be arbitrated in Singapore. (Docket Entry No. 6, Ex. C, ¶ XX(B)). Neither party argues—and rightly so—that this arbitration provision applies to this personal injury dispute.

*Id.* at \*2. The federal district court, having found that the ADR Agreement was not enforceable, remanded the case to state court because no federal question was presented and diversity of parties is not a ground for removal for Jones Act claims. *Id.* at \*4.

### E. Proceedings on Remand in the State District Court

After the federal district court held the ADR agreement to be unenforceable and remanded the case to state court, the Frontier entities filed motions to dismiss or stay for arbitration in the 334th District Court, based this time on the arbitration clause in the EEA. The trial court denied the motions, and this interlocutory appeal followed.

## IS THE SCOPE OF THE EEA ARBITRATION AGREEMENT BROAD ENOUGH TO ENCOMPASS TORT CLAIMS?

On appeal, the Frontier entities contend the trial court erred in denying their motions to stay pending arbitration. As stated in Didmon's brief to the trial court, "the sole issue for [the trial court to determine was] whether the EEA's arbitration clause extends to Didmon's tort claims." Both parties agree that this case is governed by the Convention on the Recognition and Enforcement of Foreign Arbitral Awards. *See* 9 U.S.C. § 202 (1999). The Convention applies to seaman's employment contracts and incorporates the provisions of the FAA to the extent

6

they do not conflict with the Convention. *See Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 272–76 (5th Cir. 2002); 9 U.S.C. § 208.

## A. Standard of Review

In a matter subject to the FAA, section 51.016 of the Texas Civil Practice and Remedies Code allows for an interlocutory appeal of an order denying arbitration. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016. We apply an abuse of discretion standard of review respecting interlocutory appeals under this section. *Sidley Austin Brown & Wood, LLP v. J.A. Green Dev. Corp.*, 327 S.W.3d 859, 862–63 (Tex. App.—Dallas 2010, no pet.). Under this standard, we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.,* 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding); *Weekley Homes, L.P. v. Rao*, 336 S.W.3d 413, 418 (Tex. App.—Dallas 2011, pet. denied). Determining whether a claim falls within the scope of an arbitration agreement involves the trial court's legal interpretation of the agreement, and we review such interpretations de novo. *See McReynolds v. Elston*, 222 S.W.3d 731, 740 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (reviewing scope of arbitration clause under de novo standard of review).

*B. Does Federal Law or State Law Apply When Determining the Scope of an Arbitration Clause under the Federal Arbitration Act?*

A party seeking to compel arbitration under the FAA must establish: (1) a valid arbitration agreement exists; and (2) the claims at issue fall within that agreement's scope. *In re Dillard Dep't Stores, Inc.*, 186 S.W.3d 514, 515 (Tex. 2006). In this case, the parties agree that the EEA contains a valid arbitration agreement. They disagree, however, about the scope of the agreement. Specifically, the parties disagree about whether the agreement is broad enough to encompass Didmon's personal injury claims.

The parties also disagree about whether federal or state law applies when determining the scope of an arbitration agreement. Didmon—citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S., 938, 944 (1995), *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 781 (Tex. 2006), and *In re Provine*, 312, 312 S.W.3d 824, 829 (Tex. App—Houston [1st Dist.] 2009, orig. proceeding)—argues that when determining whether parties have agreed to arbitrate courts should apply ordinary state law principles regarding the formation of contracts. We agree with that proposition of law. However, that general proposition involves the first prong of what a party seeking arbitration under the FAA must establish, *i.e.*, whether a valid arbitration agreement exists.

This case, however, involves the second prong of what a party seeking arbitration under the FAA must prove, i.e., that its claims fall within the

agreement's scope. Texas and federal law are clear that "under the FAA, state law governs whether a litigant agreed to arbitrate, and *federal law governs the scope of an arbitration clause." In re Weekley Homes*, L.P., 180 S.W.3d 127, 130 (Tex. 2005) (emphasis added) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927 (1983)); *see also In re Labatt Food Serv., L.P.*, 279 S.W.3d at 643 (same); *Roe v. Ladymon*, 318 S.W.3d 502, 511 (Tex. App.—Dallas 2010, no pet.); *In re Helix Energy Solutions, Group, Inc.*, 303 S.W.3d 386, 396 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding); *In re James E. Bashow & Co.*, 305 S.W.3d 44, 51–52 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding). However, because many of the underlying principles are the same under state and federal law, where appropriate, this opinion relies on both federal and state cases. *See Forest Oil Corp. v. McAllen*, 268, S.W.3d 51, 56 n.10 (Tex. 2008).

## C. Presumption in Favor of Arbitration

Questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S. Ct. 927, 941 (1983). The Federal Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language or an allegation of waiver, delay, or a like defense to arbitrability. *Moses H. Cone*, 460 U.S. at 24–25, 103 S. Ct. at

9

941. When deciding whether claims fall within an arbitration agreement, courts employ a strong presumption in favor of arbitration. *Cantella & Co., Inc. v. Goodwin*, 924 S.W.2d 943, 944 (Tex. 1996) (per curiam) (holding that "[f]ederal and state law strongly favor arbitration," and that "a presumption exists in favor of agreements to arbitrate under the FAA"); *Prudential Sec. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (holding that under the FAA "any doubts as to whether claims fall within the scope of the agreement must be resolved in favor of arbitration," and that "[t]he policy in favor of enforcing arbitration agreements is so compelling that a court should not deny arbitration '*unless it can be said with positive assurance* that an arbitration clause is *not* susceptible of an interpretation which would cover the dispute at issue'"). This presumption in favor of arbitration is imposed whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt. *Beckham v. William Bayley Co.*, 655 F.Supp. 288, 290 (N.D. Tex. 1987). "Nonetheless, the strong policy in favor of arbitration cannot serve to stretch a contractual clause beyond the scope intended by the parties or to allow modification of the unambiguous meaning of the arbitration clause." *Osornia v. AmeriMex Motor & Controls, Inc.*, 367 S.W.3d 707, 712 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

*D. Consideration of Circumstances Surrounding Execution of Agreements*

Didmon argues that, under ordinary principles of Texas law, we should consider the EEA and the ADR agreement together in determining the meaning of the arbitration agreement in the EEA. Specifically, Didmon seems to contend that because the ADR agreement attempted to specifically cover tort claims, the parties must have thought that the earlier-signed EEA did not do so.

We have already held that federal law, not state law, applies when determining the scope of an arbitration agreement. However, we may construe the EEA in light of the facts and circumstances surrounding its execution, but we may not consider parol evidence to vary the terms of the agreement or to create ambiguity where the language of the agreement is clear and unambiguous. *See Houston Exploration Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011); *Don's Bldg. Supply v. One Beacon Incs. Co.*, 267 S.W.3d 20, 23 (Tex. 2008); *David J. Sacks, P.C. v. Haden*, 266 S.W.3d 447, 450–51 (Tex. 2008). If the contract uses unambiguous language, we enforce it as written. *See David J. Sacks*, 266 S.W.3d at 450; *Fiess v. State Farm Lloyds*, 202 S .W.3d 744, 753 (Tex. 2006). This is because the parties' intent is "governed by what they said in the agreement, not by what one side or the other alleges they intended to say but did not." *Gilbert Tex. Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 127 (Tex. 2010).

Thus, we will consider the fact that the parties attempted, unsuccessfully, to supercede the EEA, but we will not use the terms of the ADR Agreement to vary the terms of the EEA, which the parties agree is effective. We will determine the scope of the EEA from the language of the EEA.

Additionally, the fact that the ADR agreement specifically covers tort claims is not proof that the EEA did not cover the same claims; that must be determined from the language of the EEA itself. Rather than concluding that the parties must have signed the ADR agreement so that they could cover torts, which were excluded from the EEA, an equal inference could be made that the parties signed the ADR agreement for the purpose of excluding workers' compensation and trade secret claims, which arguably would have been covered by the EEA.

*E. Scope of the EEA*

The EEA covers "[a]ny dispute arising out of or in connection with this contract, including any question regarding its existence, validity or termination . . ." The Frontier entities contend that this is a broad arbitration clause that covers both contract disputes and torts, while Didmon contends that it is narrow and covers only contract disputes. To determine whether a claim falls within the scope of an arbitration clause, courts must "focus on the factual allegations of the complaint, rather than the legal causes of action asserted." *In re Rubiola*, 334 S.W.3d 220, 225 (Tex. 2011) (orig. proceeding).

Both the Supreme Court and the Fifth Circuit have characterized similar arbitration clauses as broad arbitration clauses capable of expansive reach. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 397–98, 87 S. Ct. 1801, 1802-03 (1967) (labelling as "broad" a clause requiring arbitration of "[a]ny controversy or claim arising out of or relating to this Agreement"); *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 165 (5th Cir.1998) (holding that when parties agree to an arbitration clause governing "[a]ny dispute . . . arising out of or in connection with or relating to this Agreement," they "intend the clause to reach all aspects of the relationship."). Generally, when an arbitration provision uses the language "any dispute," it is considered broad. *In re Hornbeck Offshore Corp.*, 981 F.2d 752, 755 (5th Cir. 1993); *In re Conseco Fin. Serv. Corp.*, 19 S.W.3d 562, 568 (Tex. App.—Waco 2000, orig. proceeding). Such broad clauses are capable of expansive reach. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) (noting that "court distinguish 'narrow arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract"); *see also Associated Air Freight, Inc. v. Meek*, No. 01-00-00994, 2001 WL 225516 (Tex. App.—Houston [1st Dist.] 2001, no pet.) (holding that clause requiring arbitration of "a dispute hereunder" was narrow because it omitted terms such as

"any controversy or claim arising out of or relating to the contract."). Broad arbitration clauses, like the clause in the EEA, are not limited to claims that literally "arise under the contract," but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute. *Pennzoil Exploration*, 139 F.3d at 1067.

We consider whether the facts alleged are intertwined with the contract containing the arbitration clause. *Jack B. Anglin Co. v. Tipps*, 842 S.W.2d 266, 271 (Tex.1992) (orig. proceeding). If the facts alleged "touch matters," have a "significant relationship" to, are "inextricably enmeshed" with, or are "factually intertwined" with the contract containing the arbitration agreement, the claim is arbitrable. *Cotton Commercial USA, Inc. v. Clear Creek ISD*, 387 S.W.3d 99, 108 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *Pennzoil Co. v. Arnold Oil Co.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, orig. proceeding). But "[i]f the facts alleged in support of the claim stand alone, are completely independent of the contract, and the claim could be maintained without reference to the contract, the claim is not subject to arbitration." *Cotton Commercial*, 387 S.W.3d at 108; *Pennzoil*, 30 S.W.3d at 498.

In *Marinechance Shipping, Ltd. v. Sebastian*, 143 F.3d 216 (5th Cir. 1998), the Fifth Circuit considered a forum selection clause[2] under very similar factual circumstances. In that case, an injured seaman brought an admiralty suit against the vessel-owner of the ship on which he was injured while working. *Id.* at 217. The seaman's employment documents contained two forum-selection clauses. The first covered "[a]ll claims, complaints or controversies relative to the implementation and interpretation of this overseas employment contract[.]" *Id.* at 219. The second applied to "any and all disputes or controversies arising out of or by virtue of this Contract[.]" *Id.* at 220. The Fifth Circuit assumed, for purpose of the opinion, that the first clause was limited to contractual, not tort claims. *Id.* at 222. However, the court held that the second clause—applicable to "any and all disputes or controversies arising out of or by virtue of this Contract"—was broad enough to include tort clauses of action arising during the course of employment between the seaman and the vessel owner. *Id.* at 222–23. In so holding, the court relied on *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587–88, 111 S. Ct. 1522, 1524–25 (1991), a case in which the Supreme Court held that a forum-selection clause in a passenger's contract with a cruise company, which applied to "all disputes and matters whatsoever

---

[2]    We note that the supreme court has classified an arbitration agreement as "another type of forum-selection clause" and has found no meaningful distinction between a litigation forum-selection clause and an arbitration clause. *See In re AIU Ins. Co.*, 148 S.W.3d 109, 115–16 (Tex. 2004) (orig. proceeding); *see also Francisco*, 293 F.3d at 278 (finding no "meaningful distinction" between arbitration clause and forum-selection clause in deciding whether tort claims are covered).

arising under, in connection with, or incident to this Contract," was broad enough to cover the passenger's negligence action arising out of a slip-and-fall accident aboard the ship. *Id.*

The arbitration clause in question provides that it applies to "[a]ny dispute arising out of or in connection with this contract, including any question regarding its existence, validity or termination[.]" The federal district court's remand order stated that "[the EEA] only requires disputes about its 'existence, validity or termination' to arbitrated in Singapore." However, the order quotes only the second portion of the arbitration clause; it does not mention the portion of the clause immediately preceding that phrase, which states that it applies to "Any dispute arising out of or in connection with this contract[.]"

The Frontier entities argue that the federal district court's order is not binding because it is dicta, and is erroneous because it inadvertently omitted the broad language immediately preceding the quoted phrase limiting its applicability to contractual disputes about the "existence, validity or termination" of the EEA. We agree that the language in the federal district court's opinion is dicta because the federal district court makes it clear that no party was pursuing arbitration under the EEA; the only clause the federal district court was called upon to review was the ADR agreement, which it declared invalid because it was not signed by Frontier. And, nothing in the federal district court's opinion indicates that it

16

considered what effect, if any, the presence of the clause "any dispute arising out of or in connection with this contract" has on the scope of the arbitration clause presented here. Thus, that is the analysis that this Court will undertake.

The phrase "any dispute arising out of or in connection with the contract" is virtually identical to that the Fifth Circuit found broad enough to cover personal injuries in *Marinechance Shipping*. *See* 143 F.3d at 220 (interpreting clause providing covering "any and all disputes or controversies arising out of or by virtue of this Contract[.]")

And, Didmon's personal injury claims have a significant relationship to the EEA, and his claims could not stand alone without reference to the EEA. Specifically, the Jones Act provides a cause of action for a seaman injured in the course of his employment by the negligence of his employer. *See* 46 U.S.C.A. § 30104; *see also Am. Dredging Co. v. Miller*, 510 U.S. 443, 455, 114 S. Ct. 981, 989 (1994) (describing the Jones Act as legislation that "establishes a uniform federal law that state as well as federal courts must apply to the determination of employer liability to seamen."). Its purpose is to provide for the benefit and protection of "seamen who are peculiarly the wards of admiralty." *The Arizona v. Anelich*, 298 U.S. 110, 123, 56 S. Ct. 707, 77 (1936). Indeed, whether a maritime employee has the requisite employment connection to a vessel in navigation to qualify as a member of the crew is a fact question for the jury. *Chandris, Inc. v.*

*Latsis*, 515 U.S. 347, 369, 115 S. Ct. 2712, 2190 (1995). Didmon's employment contract, which describes his place of employment at a mobile offshore drilling unit, would certainly have some relevance to deciding this issue, which is an element of his case. The EEA also contemplates the benefits to which Didmon may be entitled "due to an accident 'on duty'" during his employment in subsection XI. *See Franciso*, 293 F.3d at 278 (considering fact that employment agreement included remedies for work-related injuries in determining that personal injuries were covered by arbitration clause in same contract).

Under the Code Construction Act, "'[i]ncludes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration, and use of the terms does not create a presumption that components not expressed are excluded.". *See* TEX. GOV'T CODE ANN. § 311.005(13) (Vernon 2013); *see also Tex. West Oaks Hosp., LP v. Williams*, 371 S.W.3d 171, 179 (Tex. 2012) (holding that Legislature's use of the term "including" meant that statutory definition was nonexclusive).

Thus, we conclude that the phrase "including any question regarding its existence, validity or termination," is not exclusive and does not limit the preceding clause, which states that the arbitration provision applies to "any dispute arising out of or in connection with this contract."

Accordingly, we hold that the trial court erred in refusing to compel arbitration pursuant to the arbitration clause of the EEA.

## CONCLUSION

We reverse the trial court's order and remand for further proceedings.


Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.