

# NUMBER 13-15-00163-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

HUDSON INSURANCE
COMPANY,                                                          **Appellant,**

**v.**

**BVB PARTNERS,**                                                 **Appellee.**

### On appeal from the County Court at Law No. Four
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Longoria
### Memorandum Opinion by Justice Longoria

By two issues, appellant Hudson Insurance Company (Hudson) challenges the

trial court's order denying its motion to compel arbitration of the lawsuit filed against it by

appellee BVB Partners (BVB). We reverse and remand.

## I. BACKGROUND[1]

The multiple-peril crop insurance policy at issue in this case was issued by Hudson, a private insurance company, but reinsured by the Federal Crop Insurance Corporation (FCIC). We begin with a brief explanation of the hybrid legal status of such policies.

Congress created the FCIC as a wholly-owned corporation within the Department of Agriculture and made it responsible for administering a federal system of crop insurance. 7 U.S.C.A. § 1503 (West, Westlaw through P.L. 114-61). The FCIC both directly insures farmers and contracts with approved private insurers to permit them to issue the same crop insurance policies. *Id.* § 1507(c) (West, Westlaw through P.L. 114-61). The approved private insurers are in turn reinsured by the FCIC. *Alliance Ins. Co. v. Wilson*, 384 F.3d 547, 549–50 (8th Cir. 2004). The Risk Management Association (RMA), a division of the Department of Agriculture which manages the FCIC, writes the terms of both types of policies—titled the "Basic Provisions"—and publishes them in the Code of Federal Regulations. *See* 7 C.F.R. § 457.8 (West, Westlaw through 80 F.R. 64298). The Basic Provisions expressly provide that nothing therein may "be waived or varied in any way by [the insurer], [the insurer's] insurance agent or any other contractor or employee of [the insurer] or any employee of USDA unless the policy specifically authorizes a waiver or modification by written agreement."[2] *Id.* § 457.8 ¶ 1.

---

[1] We address different issues involving the same contract in a companion case styled *Hudson Insurance Co. v. Bruce Gamble Farms*, *Jim Gamble Farms, Brian Jones Farms, and CropGuard Group, Inc.*, No. 13-15-00098-CV, 2015 WL _____, (Tex. App.—Corpus Christi Nov. 5, 2015, no pet. h.) (mem. op.).

[2] We will cite to the Basic Provisions throughout this opinion because BVB's crop insurance policy tracked the Basic Provisions in all relevant parts.

Under the Basic Provisions, a planting of an insured crop in a particular county qualifies for one of a series of unit systems: "basic units," "whole farm units," "enterprise units," or "optional units." *Id.* A planting qualifies as an enterprise unit if it: (1) contains all of the farmer's insured crop in that county; (2) is planted in two or more sections[3]; and (3) at least two of those sections contain the lesser of either: (i) 20 acres of the insured crop or (2) 20% of the entire acreage of the farmer's insured crop planted in that county. *Id.* § 457.8 ¶ 34(a)(4)(i), (ii). Whether a unit of planting complies with the third requirement can determine whether that unit is eligible for coverage of a loss known as a prevented planting.[4] All prevented planting payments due to a farmer will be deducted from the amount of the farmer's premium. *Id.* § 457.8 ¶ 2(e). However, a unit of planting which does not comply with the requirements of section 34(a)(4)(i) and (ii) is not eligible for a prevented planting payment. *Id.* § 457.8 ¶ 17(f)(1).

Beginning in 2008, BVB obtained multiple-peril crop insurance coverage from Hudson through CropGuard Group, Inc., Hudson's insurance agent ("the Policy").[5] The Policy renewed automatically each year until it was terminated in 2014. *See id.* § 457.8 ¶ 2(a). According to BVB's live petition, in January of 2013, BVB intended to plant 522.7 acres of cotton in Hidalgo County. BVB asked CropGuard if, under the 2013 terms of the

---

[3] A section, for these purposes, is "a unit of measure under a rectangular survey system describing a tract of land usually one mile square and containing approximately 640 acres." 7 C.F.R. § 457.8 ¶ 1 (West, Westlaw through 80 F.R. 64298).

[4] A prevented planting loss occurs when an insured farmer fails to plant the insured crop by a specific date "due to an insured cause of loss that is general to the surrounding area and that prevents other producers from planting acreage with similar characteristics." *Id.*

[5] There is some question about whether BVB obtained crop insurance through CropGuard Group, Inc., or Crop Guard Insurance Agency, LLC. We discuss the differences between the two entities in Part IV of the companion case, but the distinctions are not relevant for purposes of this opinion.

policies, prevented planting coverage was still unavailable for plantings which did not comply with section 34(a)(4)(i) and (ii) of the Basic Provisions. CropGuard allegedly referred the question to a Hudson representative who informed BVB that the requirement was not in effect for the 2013 crop year. BVB did not plant its 2013 cotton crops in a way that complied with 34(a)(4)(i) and (ii) of the Basic Provisions. BVB later filed a prevented planting claim on its crop, which Hudson denied because the requirement was actually still in effect. *See id.* § 457.8 ¶ 17(f)(1). Hudson then calculated BVB's premium using a different unit system. BVB alleged that, as a result, it payed Hudson $25,000 more in premiums than it would have if it received a prevented planting deduction for its cotton crop.

BVB filed suit against Hudson and CropGuard for negligent misrepresentation and requested $25,000 in damages. Hudson filed an answer and a motion to compel arbitration. Hudson alleged in the motion to compel that the Policy contained a valid arbitration clause governed by the Federal Arbitration Act (FAA) and that clause covered BVB's misrepresentation claim. Hudson argued in a supplemental motion that BVB was required to arbitrate even if it was not a signatory because it was effectively suing on the Policy and because BVB had already received a substantial benefit from the Policy. BVB responded that its misrepresentation claim was outside of the scope of the arbitration clause and that Hudson's theories of suing on the contract and direct benefits estoppel were inapplicable.

After reviewing Hudson's motion to compel arbitration, the supplement to the motion, and BVB's response, the trial court denied Hudson's motion without stating its

4

reasons. Hudson filed this interlocutory appeal.[6]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.016 (West, Westlaw through 2015 R.S.).

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review the trial court's ruling on a motion to compel arbitration for abuse of discretion. *Beldon Roofing Co. v. Sunchase IV Homeowners' Ass'n, Inc.*, No. 13-14-00343-CV, ___ S.W.3d ___, ___, 2015 WL 3523157, at *5 (Tex. App.—Corpus Christi June 4, 2015, no pet.). Under this standard, "we defer to the trial court's factual determinations if they are supported by evidence, but we review the trial court's legal determinations de novo." *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009) (orig. proceeding).

When evaluating a motion to compel arbitration, courts determine first whether a valid arbitration agreement exists between the parties and then whether the agreement covers the claims raised in the case. *In re D. Wilson Const. Co.*, 196 S.W.3d 774, 781 (Tex. 2006) (orig. proceeding). If the court concludes that an agreement to arbitrate exists, a strong federal presumption in favor of arbitration arises "such that myriad doubts—as to waiver, scope, and other issues not relating to enforceability—must be resolved in favor of arbitration." *In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008) (orig. proceeding). If the trial court finds both that an agreement to arbitrate exists and that the claims asserted are within the agreement's scope, the court must compel arbitration unless the party resisting arbitration proves an affirmative defense. *In re Odyssey Healthcare, Inc.*, 310 S.W.3d 419, 422 (Tex. 2010) (per curiam) (orig. proceeding).

---

[6] CropGuard is not a party to this appeal.

5

Courts determine whether an agreement to arbitrate covers a party's claims by looking to the party's factual allegations rather than the causes of actions asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). Whether the agreement encompasses the facts a party pled is a matter of contract interpretation and thus a question of law for the court. *BBVA Compass Inv. Solutions, Inc. v. Brooks*, 456 S.W.3d 711, 718 (Tex. App.—Fort Worth 2015, no pet.). When interpreting an arbitration clause, a court's goal is to "give effect to the contractual rights and expectations of the parties. In this endeavor, as with any other contract, the parties' intentions control." *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 90 (Tex. 2011) (citations and internal quotation marks omitted). We "give words and phrases their ordinary and generally accepted meaning, reading them in context and in light of the rules of grammar and common usage" unless there is evidence the parties intended a different meaning. *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015). We resolve all ambiguities in favor of arbitration but strictly enforce an unambiguous arbitration clause as it is written. *FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 694 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). We may not deny arbitration "unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue." *In re D. Wilson Const. Co.*, 196 S.W.3d at 783.

### III. SCOPE OF THE ARBITRATION AGREEMENT

The parties do not dispute the existence of the agreement to arbitrate or that it is governed by the FAA. Their sole dispute is whether BVB's claims are within the

agreement's scope.

> The arbitration agreement reads in relevant part:

> If you and we *fail to agree on any determination made by us* except those specified in section 20(d) or (e), the disagreement may be resolved through mediation in accordance with section 20(g). If resolution cannot be reached through mediation, or you and we do not agree to mediation, the disagreement must be resolved through arbitration in accordance with the rules of the American Arbitration Association (AAA).

7 C.F.R. § 457.8 ¶ 20(a) (emphasis added). The parties agree that Hudson made a determination within the meaning of the Policy when Hudson: (1) decided that BVB's crops were not eligible for prevented planting coverage; (2) calculated BVB's premium using a different unit system; and (3) charged that premium to BVB. Hudson asserts that denial of its motion to compel was error because BVB's factual allegations necessarily involve a "disagreement" with these three determinations. BVB responds that it has no difference of opinion with any of these determinations because each was correct under the actual terms of the Policy. Rather, BVB argues that its claim is based solely on the alleged misrepresentation that caused BVB to plant its crop incorrectly and sustain damages as a result.[7]

When construing an insurance policy, courts must be mindful of the interpretations other courts gave to the same or similar policy language. *RSUI Indem. Co.*, 466 S.W.3d at 118. Texas courts strive for uniformity when interpreting insurance provisions, especially when policies with identical or similar language are in use across multiple jurisdictions. *Id.* The Basic Provisions are used in crop insurance policies across the nation but very few cases address the scope of the arbitration clause. Until recently, the

---

[7] We note that neither party argued in their briefs or at oral argument that Hudson's alleged misrepresentation was itself a determination within the meaning of the Policy.

arbitration provision in the Basic Provisions included the word "factual" before the word "determination." *E.g.*, *Nobles v. Rural Cmty. Ins. Servs.*, 122 F. Supp. 2d 1290, 1293 (M.D. Ala. 2000). The few courts to interpret this version of the arbitration clause required parties to arbitrate factual disagreements but permitted the parties to litigate legal issues in court after completing arbitration. *E.g.*, *Nobles v. Rural Cmty. Ins. Servs. (Nobles II)*, 303 F. Supp. 2d 1279, 1281 (M.D. Ala. 2004). We have found no case law directly addressing the scope of the arbitration provision after the RMA deleted the word "factual."[8] However, we cannot say with positive assurance that there is no reasonable interpretation of the arbitration clause which covers BVB's claims.

Before examining whether BVB's factual allegations are within the scope of the arbitration clause, we pause to address Hudson's contention that we must apply the test applicable for interpreting the scope of "broad" arbitration clauses. A "broad" arbitration clause is one that "embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Didmon*, 438 S.W.3d at 695; *e.g., id.* at 696–97 (involving clause requiring arbitration of "any dispute arising out of or in connection with this contract"). Hudson cites to multiple authorities interpreting "broad" arbitration clauses and asserts that the clause in this case is similarly "broad" because it refers to "any determination" and contains no limiting language. This argument is significant because if the arbitration agreement in this case is "broad" in the technical sense, we must compel the parties to arbitrate if "the facts alleged 'touch

---

[8] The Supreme Court of Washington observed in dicta that an arbitration agreement with the same wording as the one in this case "specifically requires arbitration of disputes arising under the policy." *Weidert v. Hanson*, 309 P.3d 435, 437 (2013) (per curiam). However, the *Weidert* Court made that observation in the context of deciding that the Federal Arbitration Act did not permit a state court to refuse to enforce an otherwise valid arbitration agreement on equitable grounds. *Id.* The Court did not actually analyze the scope of the arbitration provision.

8

matters,' have a 'significant relationship' to, are 'inextricably enmeshed' with, or are 'factually intertwined' with the contract that is subject to the arbitration agreement." *See Serv. Corp. Int'l. v. Lopez*, 162 S.W.3d 801, 810 (Tex. App.—Corpus Christi 2005, no pet.) (combined appeal and orig. proceeding); *see also Didmon*, 438 S.W.3d at 695; *Pennzoil Co. v. Arnold Oil Co., Inc.*, 30 S.W.3d 494, 498 (Tex. App.—San Antonio 2000, no pet.). To the extent that Hudson asks us to apply the standard we used in *Service Corporation International* and other cases, we reject that request. The arbitration clause's language does not fit well into the general categories of arbitration clauses recognized by Texas courts but, as we explain in more detail below, it is clear that the clause requires an arbitrable claim to involve a specific set of a facts: a disagreement on a "determination" made by Hudson. While the clause might be broad in the sense that disagreements between Hudson and its insureds will most likely frequently involve differences of opinion over Hudson's "determinations," the arbitration clause is not broad in the sense that Texas courts usually use the term.

We now turn directly to the question of whether the arbitration clause covers Hudson's factual allegations. In this analysis, we must interpret the arbitration clause broadly, resolving all doubts in favor of arbitration. *In re NEXT Fin. Group, Inc.*, 271 S.W.3d 263, 267 (Tex. 2008) (per curiam) (orig. proceeding); *In re D. Wilson Const. Co.*, 196 S.W.3d at 783. The arbitration clause provides that if the parties "fail to agree on any determination made by [Hudson]," the "disagreement" will be resolved through binding arbitration. *See* 7 C.F.R. § 457.8 ¶ 20(a). The clause nowhere defines either a "determination" or a "disagreement,"[9] so we will assume the parties intended for each

---

[9] We presume that when the parties wrote that they "fail[ed] to agree" and the "disagreement" must be resolved through arbitration, they intended both phrases to have the same meaning.

9

term to bear its "plain, generally accepted meaning." *Epps v. Fowler*, 351 S.W.3d 862, 866 (Tex. 2011). Courts often look to dictionaries to assist in ascertaining the meaning of a word left undefined by contract or statute. *Id.* The dictionary definition of a "determination" is a "final decision by a court or administrative agency." BLACK'S LAW DICTIONARY 514 (9th ed. 2009). Hudson is not a court or an agency, but this definition agrees with the parties' statements at oral argument that a "determination" is a decision. This definition also agrees with how the Policy uses the term. For example, if an insured farmer fails to comply with certain notice provisions when crops are damaged or lost, Hudson may treat the loss as uncovered by the Policy unless Hudson "determine[s]" that it has sufficient data to adjust the loss. 7 C.F.R. § 457.8 ¶ 14(b)(5). The dictionary definition of a "disagreement" is "[a] difference of opinion; a lack of agreement" or "a quarrel." BLACK'S LAW DICTIONARY 529 (9th ed. 2009). Neither party argues the language of the arbitration clause is ambiguous, and with these definitions in mind, we agree: the arbitration clause requires the parties to arbitrate if BVB has a difference of opinion with one of Hudson's "determinations." *See Certain Underwriters at Lloyd's Subscribing to Policy No. WDO-10000 v. KKM Inc.*, 215 S.W.3d 486, 491 (Tex. App.—Corpus Christi 2006, pet. denied) (observing that a contract is not ambiguous if it can be given a definite and certain legal meaning).

We agree with Hudson that BVB's claims fall within the scope of the clause because the misrepresentation is not the only fact that BVB alleged in its pleadings. BVB alleged that Hudson made a misrepresentation, BVB relied on that misrepresentation, and BVB's reliance resulted in $25,000 in damages. Admittedly, that BVB included the

three determinations[10] as part of its factual allegations does not necessarily mean that BVB has a difference of opinion with those determinations. BVB's argument—that its real disagreement is with the alleged misrepresentation because BVB's damages were effectively complete at the time BVB relied on the misrepresentation to its detriment—has some force. The Basic Provisions expressly give Hudson little leeway to waive or vary its terms. *See* 7 C.F.R. § 457.8 ¶ 1 (stating that "[t]he provisions of the policy may not be waived or varied in any way by us, our insurance agent or any other contractor or employee of ours or any employee of USDA unless the policy specifically authorizes a waiver or modification by written agreement"); *see also id.* § 457.8 ¶ 17(f). However, the fact remains that the end result of the three determinations was Hudson's assessment of BVB's premium at a rate which BVB alleged resulted in it overpaying by $25,000. BVB responded to Hudson's three determinations by filing suit to recover the exact same amount. BVB effectively alleged that the "determination" of its premium rate was too high. We cannot say on these facts that BVB had no disagreement with the determinations that allegedly resulted in it overpaying.

In sum, we conclude that BVB's factual allegations include a disagreement with a determination, thereby placing its claim within the scope of the arbitration clause. *See In re NEXT Fin. Group, Inc.*, 271 S.W.3d at 267; *In re D. Wilson Const. Co.*, 196 S.W.3d at 783. The trial court abused its discretion by concluding to the contrary. *See In re Odyssey Healthcare, Inc.*, 310 S.W.3d at 422. We sustain Hudson's first issue. Our disposition of

---

[10] The three "determinations" that we refer to are: (1) Hudson's decision that BVB's crops did not qualify for a prevented planting payment; (2) Hudson's calculation of BVB's premium using a different unit system; and (3) Hudson's decision to charge the higher premium to BVB.

11

Hudson's first issue makes it unnecessary to reach its second issue. *See* TEX. R. APP. P. 47.1.

## IV. CONCLUSION

We reverse the trial court's order and remand for entry of an order compelling the parties to arbitration.

NORA L. LONGORIA
Justice

Delivered and filed the
5th day of November, 2015.