**DISSENT; and Opinion Filed August 9, 2019.**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-18-00266-CV

**STEVE GRAY AND HAPPY ACCIDENTS, INC., Appellants**
**V.**
**BRYAN WARD, Appellee**

**On Appeal from the 366th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 366-05277-2017**

# DISSENTING OPINION
Before Justices Whitehill, Molberg, and Reichek
Dissenting Opinion by Justice Molberg

Because Ward's employment-related claims have no significant relationship to the limited partnership agreement, and because the arbitration agreement here applies only to Ward's role as a limited partner of Primal Health, and not to his distinct role as an employee of Primal Health, Gray or Happy Accidents, Inc., I respectfully dissent.

## I.

Arbitration is a matter of contract, and a party cannot be required to submit to arbitration any dispute he has not agreed to so submit. *AT&T Techs., Inc., v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574 (1960)); *see also Roe v. Ladymon*, 318 S.W.3d 502, 510 (Tex. App.—Dallas 2010, no pet.). Courts may require a party to submit a dispute to arbitration only if the party has agreed to do so. *See*

*Seven Hills Commercial, LLC v. Mirabel Custom Homes, Inc.*, 442 S.W.3d 706, 714 (Tex. App.—Dallas 2014, pet. denied). A party seeking to compel arbitration must establish that a valid arbitration agreement exists and that the claims asserted are within the scope of the agreement. *Roe*, 318 S.W.3d at 510. To determine whether a party's claims are within the scope of an arbitration agreement, we focus on the factual allegations and not on the legal causes of action asserted. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 754 (Tex. 2001) (orig. proceeding). We resolve any doubts about the scope in favor of arbitration. *Id.* Although both Texas and federal policy strongly favor arbitration, that policy "cannot serve to stretch a contractual clause beyond the scope intended by the parties or allow modification of the plain and unambiguous provisions of an agreement." *Belmont Constructors, Inc. v. Lyondell Petrochem. Co*., 896 S.W.2d 352, 356 (Tex. App.—Houston [1st Dist.] 1995, no pet.). All in all, arbitration is "a matter of consent, not coercion." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ*., 489 U.S. 468, 479 (1989) (quoted in *Jody James Farms, JV v. Altman Grp., Inc*., 547 S.W.3d 624, 639 (Tex. 2018)).

**II.**

Here, a fair reading of the limited partnership agreement as a whole shows not that it defines the parameters of Ward's employment by the partnership, as the majority effectively concludes, but that it does not define the parameters of individual employment relationships at all. Indeed, if anything, the language of the agreement excludes coverage of independent employment arrangements, like Ward's, from the partnership agreement's operation. Section 4.6(a) makes clear that "no Partner . . . shall receive any salary . . . for services rendered to or on behalf of the Partnership or otherwise *in [his] capacity as a Partner*." Thereafter, section 5.1 provides that "[a] limited partner . . . may also be an employee or agent of the Partnership . . . . The existence of these relationships and acting in such capacities will not result in a Limited Partner being deemed to be participating in the control of the business of the Partnership or otherwise affect the limited

–2–

liability of any Limited Partner." At most, these provisions merely acknowledge that a separate employment relationship may exist, and nothing more. Viewed correctly, however, this language clarifies that individual employment operates outside of the partnership agreement.[1]

Even Gray admitted that he viewed Ward's limited partnership status and his employment status as distinct. In a January 9, 2017 email, for example, Gray wrote to Ward that "you need to make plans to leave Primal as an employee by Mar. 31, 2017 regardless of whether we have concluded the buyout of your [partnership] interest by that point." On March 2, 2017, Gray sent an email to Ward in which he noted that "[w]e both agreed that even if we cannot reach a resolution of a buyout price before that date, 4/30/17 will nevertheless be your final day of employment with Primal."[2]

While the arbitration agreement applies to "disputes and claims relating to this Agreement," it is only by utilizing an improperly expansive definition of "relating to" that the majority is able to bend the record to comport with its conclusion here. When used in such an unanchored manner, the term becomes meaningless and devolves into nothing more than a judicial shibboleth to support and then accomplish whatever particular result is desired. The true test is whether there is a "significant relationship" between the partnership agreement and Ward's employment-related disputes. *See, e.g., FD Frontier Drilling (Cyprus), Ltd. v. Didmon*, 438 S.W.3d 688, 695 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Pennzoil Expl. & Prod. Co. v. Ramco Energy, Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998)). There is not.

---

[1] At the outset, the majority uses the nuanced term "partnership employment" in an apparent effort to weld together two separate concepts that do not exist in the evidence. In fact, the concept of "partnership employment" is expressly prohibited by section 4.6(a) of the limited partnership agreement. Remarkably, the majority goes to great lengths to blur the distinction between Ward's role as a partner and his role as an employee, even as appellants concede—at least at one point in their opening brief—that two different relationships exist.

[2] These are just two of several examples of Gray's acknowledging that Ward's employment relationship and his limited partner relationship with Primal Health are distinct.

–3–

Viewed through yet another lens, Ward's employment-related claims are independent of the limited partnership agreement, do not rely on the agreement, and surely may be maintained without any meaningful reference to it. In such circumstances, Ward's employment claims are not subject to arbitration. *VSR Fin. Servs., Inc. v. McLendon*, 409 S.W.3d 817, 832 (Tex. App.—Dallas 2013, no pet.); *see also Steer Wealth Mgmt., LLC v. Denson*, 537 S.W.3d 558, 569 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

The majority also punctuates its opinion with pontifical statements that have no support in the record or are ultimately without significance. For example, the majority says that Ward's claims "are inextricably enmeshed and factually intertwined with the limited partnership agreement." There is no indication of this. Ward brought two claims arising from his independent employer–employee relationship. One is a general wrongful termination claim, and the other is a defamation claim resulting from the manner of that termination.[3] In yet another attempt to blur the distinction between Ward's roles as partner and employee, or to fabricate a "significant relationship" between Ward's employment-related claims and the partnership agreement, the majority says "Ward's [employment-related] claims pertain to: (i) his employment by the Partnership; (ii) his right to receive a salary from the Partnership; and (iii) Gray's authority, as CEO of the Partnership, to terminate Ward's employment." While perhaps initially seductive, these statements mean nothing, given that the limited partnership agreement does not speak to items (i) and (ii) as they relate to Ward's status as an employee, and nowhere in my review of the record do I see any challenge by Ward in his wrongful termination claim to Gray's general authority to terminate employees. Next, the majority says Ward's employment-related claims

---

[3] Ward's employment-related claims as currently pleaded in his original petition may lack factual precision, but, if that matters at all, that is a matter for special exception practice under our rules of civil procedure, TEX. R. CIV. P. 91, not a basis to compel arbitration. And even if Ward's claims arguably may appear to lack vitality at this early stage of the litigation, that, too, says nothing about whether the parties agreed to submit those claims to arbitration.

"also relate to the breach of fiduciary duty and contract claims that Ward does not dispute are arbitrable." How this is possible escapes me. Only in his role as a partner under the partnership agreement would Ward possess fiduciary duty and breach of partnership agreement claims. His role as an independent employee would give him no such claims. Finally, the majority suggests that certain buy-out provisions under the partnership agreement may be inoperative when a "limited partner's employment status is terminated." This false notion comes directly from the inaccurate representation in appellants' brief that "under the LP Agreement . . . if an employee of the Partnership is terminated (versus resigning), he or she does not have a right to force the general partner to purchase the limited partner's interest." There is nothing in the agreement that says or indicates this. In fact, the agreement speaks of resigning one's *partnership* interest. It makes no mention of employment or termination of employment. That the majority would give currency to this illegitimate notion is troubling.

### III.

This is yet another case in which arbitration becomes a matter of coercion, not consent, with the right to trial by jury as the recurrent fatality. The district court was correct in refusing to compel Ward's employment-related claims to arbitration. Accordingly, I dissent.


/Ken Molberg/
_____
KEN MOLBERG
JUSTICE


180266DF.P05